TRI–ASPEN CONSTRUCTION
CO., Petitioner,

v.

Wayne A. JOHNSON and Cheryl
Johnson, Respondents.

No. 83SC403.

Supreme Court of Colorado,
En Banc.

Feb. 24, 1986.

Trott, Kunstle & Hughes, Bernard L. Trott, Gary L. Gustafson, Colorado Springs, for petitioner.

Rector, Retherford, Mullen & Johnson, Anthony A. Johnson, Neil C. Bruce, Colorado Springs, for respondents.

LOHR, Justice.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *Johnson v. Graham*, 679 P.2d 1090 (Colo. App.1983), a case involving claims by Wayne and Carol Johnson based upon structural damage to their house. We limited our review, however, to the issue of whether the trial court was correct, as the

court of appeals held, in denying the motion of the builder, Tri-Aspen Construction Company (Tri-Aspen), for a directed verdict on the Johnsons' claim for exemplary damages. We conclude that the evidence was insufficient to submit this claim to the jury and therefore reverse.

## I.

In 1973, Tri-Aspen contracted to build a house for Robert Graham on a steep hillside in Colorado Springs. The house was completed in 1974, and Graham and his family resided there until the summer of 1978, when Graham sold the house to Wayne and Carol Johnson. The Johnsons moved into the house that summer, and by January of 1979, they began to discover cracks in the interior walls and in the joints of the exterior masonry. They also experienced great difficulty in opening several of the doors to the house. During the spring of 1979, the Johnsons noticed more cracks in the walls, both inside and outside the house. According to Mr. Johnson, new cracks appeared each day, causing the Johnsons to become alarmed. Eventually, the house suffered extensive damage. A contractor testified at the trial that the house would require $29,000 in repairs, and a real estate appraiser testified that even in a repaired condition, the house would be worth $16,000 less than if it had never suffered any damage.

In 1979, the Johnsons filed suit in El Paso County District Court against Tri-Aspen, Graham, and Graham's employer, Builders Realty, Inc. The Johnsons alleged that Tri-Aspen was guilty of "gross and intentional negligence" in failing to install a peripheral drain at the base of the foundation and adequately prepare and compact the soil around the foundation of the house.[1] The thrust of their complaint was that the failure of Tri-Aspen to take the action necessary to assure adequate drainage permitted water to enter and remain in the soil around the foundation, which in turn caused the soil to expand and exert pressure against the uphill foundation wall. The resulting stress, the Johnsons asserted, caused the structural damage to the house. After all of the evidence had been presented, Tri-Aspen moved for a directed verdict on the issue of punitive damages. The trial court denied this motion, and the jury returned a verdict of $45,000 actual and $30,000 exemplary damages against Tri-Aspen.[2] Tri-Aspen appealed.

The court of appeals upheld the judgment against Tri-Aspen, holding that there was sufficient evidence that Tri-Aspen was guilty of negligence and "wanton and reckless disregard" of the Johnsons' rights and feelings to allow the jury to award both compensatory and punitive damages. We granted certiorari but limited our review to the question of whether the evidence was sufficient to support an award of exemplary damages against Tri-Aspen. We conclude that the trial court should have directed a verdict in favor of Tri-Aspen on this issue.

## II.

In Colorado, exemplary damages are available only in accordance with section 13–21–102, 6 C.R.S. (1973), which states:

---

1. The Johnsons also asserted a claim against Tri-Aspen for breach of an implied warranty of habitability. That claim was resolved against the Johnsons prior to trial. The propriety of the dismissal was not reached by the court of appeals and is not before us on certiorari review.

2. The Johnsons' claim against Graham was based upon concealment of the inadequate soil preparation around the foundation and misrepresentation of the condition of the house as sound when Graham sold the house to the Johnsons. The Johnsons also alleged that Graham had sold the house in the scope of his employment as an agent for Builders Realty, Inc., and thus Graham's concealment and misrepresenta-

tion should be imputed to his employer. At the close of the plaintiffs' case, the trial court directed a verdict in favor of Builders Realty, Inc. The jury awarded actual and exemplary damages against Graham. The court of appeals affirmed the directed verdict for Builders Realty, Inc. and reversed the judgment against Graham. These portions of the judgment of the court of appeals are not before us. The nature, procedural history, and disposition of the various claims and defenses of the parties are set forth in more detail in the opinion of the court of appeals. *See Johnson v. Graham,* 679 P.2d 1090 (Colo.App.1983).

In all civil actions in which damages are assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

The language of this statute has remained essentially unchanged since the enactment of the statute in 1889. *See* 1889 Colo. Sess. Laws 64. We have held that an award of exemplary damages is justified under this statute when the act causing the plaintiff's injuries was performed "with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive." *Frick v. Abell*, 198 Colo. 508, 511, 602 P.2d 852, 854 (1979) (quoting *Ress v. Rediess*, 130 Colo. 572, 579, 278 P.2d 183, 187 (1954)). We have defined "wanton and reckless" disregard in the context of exemplary damages as involving "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences." *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 215 (Colo. 1984).[3]

In order to recover exemplary damages, the party requesting them must prove beyond a reasonable doubt that the statutory standards have been met. § 13–25–127(2), 6 C.R.S. (1973); *see Mince v. Butters*, 200 Colo. 501, 503–04, 616 P.2d 127, 129 (1980). The reasonable doubt burden is by definition a heavy one, *see Palmer v. A.H. Robins Co.*, 684 P.2d at 216–17, and we have determined that proof was insufficient to carry that burden on several occasions in the past. *E.g., Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671 (Colo.1985); *Rosenbaum v. Mathews*, 113 Colo. 307, 156 P.2d 843 (1945); *Reyher v. Mayne*, 90 Colo. 586, 10 P.2d 1109 (1932).

The question of the sufficiency of evidence to justify an award of exemplary damages is one of law, *Mince v. Butters*, 200 Colo. at 504, 616 P.2d at 129, often decided, as in the present case, by the trial court in the context of a defendant's motion for a directed verdict. In resolving this question, a court must view the evidence in the light most favorable to the party against whom the motion is directed. *Palmer v. A.H. Robins Co.*, 684 P.2d at 218; *Romero v. Denver & Rio Grande Western Railway*, 183 Colo. 32, 37, 514 P.2d 626, 628 (1973). A motion for a directed verdict can be granted only when the evidence, "so considered, compels the conclusion that the minds of reasonable men

**3.** The court of appeals applied the following standard:

> The requirements for the award of exemplary damages are met if the defendant, while conscious of his conduct and cognizant of existing conditions, knew, or should have known, that the injury would probably result from his acts.

679 P.2d at 1094 (quoting *Frick v. Abell*, 198 Colo. at 511, 602 P.2d at 854). This formulation was first adopted in *Clark v. Small*, 80 Colo. 227, 229–30, 250 P. 385, 386 (1926), as a definition of "wanton and reckless disregard" as used in the exemplary damages statute. We have cited this standard approvingly in later cases, most recently in *Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671 (Colo.1985). There is seeming tension between this description of the exemplary damages standard as it relates to "wanton and reckless disregard" and the more demanding requirement also appearing in *Frick v. Abell* that exemplary damages are justified when the injury-producing act was performed "with such a wanton and reckless disregard of [the plaintiff's] rights as evidence a wrongful motive." 198 Colo. at 511, 602 P.2d at 854. We believe that the definition of "wanton and reckless" disregard appearing in *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 215 (Colo.1984), and quoted in the text to which this footnote is appended, most accurately captures the statutory meaning. *See* the exemplary damages instruction in Colorado Jury Instruction—Civil 2d 5:3 (1980), employing the language of the exemplary damages statute. The notes on use appended to that instruction suggest that Colorado Jury Instruction—Civil 2d 9:32 "when modified appropriately" may be used with instruction 5:3 "for a definition of wanton and reckless conduct." Instruction 9:32 defines "wanton and reckless negligence" in substantially the same way as "wanton and reckless" disregard is defined in *Palmer v. A.H. Robins Co.*, 684 P.2d at 218.

could not be in disagreement" that the party resisting the motion has not satisfied his burden of proof. *Romero v. Denver & Rio Grande,* 183 Colo. at 37, 514 P.2d at 628–29; *see also Palmer v. A.H. Robins, Co.,* 684 P.2d at 218. Absent evidence upon which a jury could justifiably base a verdict for the party opposing the motion, the trial court should take the case from the jury and enter a judgment for the moving party. *Sanderson v. Safeway Stores, Inc.,* 161 Colo. 271, 272, 421 P.2d 472, 473 (1966).

In the present case, the trial court denied Tri-Aspen's motion for a directed verdict against the Johnsons on the issue of punitive damages, stating that "the Jurors could accept that this [the failure to install a peripheral drain] was done to save money for Tri-Aspen ... and that this was a knowing decision on their part which would support the theory of finding that it was willful." Our review of the evidence, however, persuades us that Tri-Aspen's motion for a directed verdict should have been granted. The evidence is simply insufficient to prove, beyond a reasonable doubt, a wanton and reckless disregard by Tri-Aspen of the Johnsons' rights and feelings. *See* § 13–21–102, 6 C.R.S. (1973).[4]

At trial, the Johnsons argued that Tri-Aspen had ignored the advice of a soils engineer whom Tri-Aspen hired to inspect the soil upon which the house was to be built. The engineer allegedly had warned Tri-Aspen that the soil surrounding the house was expansive and had instructed Tri-Aspen to install a peripheral drain around the base of the foundation. The engineer who examined the soil testified on behalf of the Johnsons. He asserted that he sent Tri-Aspen a soils report, part of which directed the builder that "[i]f outfall is available, place exterior drain around foundation wall." The Johnsons' expert witness expressed the opinion that even though the installation of a peripheral drain was not standard practice in 1973, this sentence from the soils report alone should have been sufficient to inform Tri-Aspen that a peripheral drain was required. The soils engineer further testified that he attached a "drain design detail" to his report, showing the builder the manner in which the peripheral drain was to be constructed. The engineer admitted that he personally did not enclose the drain design in the soils report, but he testified that the design was sent "as a matter of routine." The Johnsons argued that Tri-Aspen ignored the recommendations in the report because it wanted to save money. According to the Johnsons, Tri-Aspen disregarded such recommendations as a matter of custom and practice.

Tri-Aspen's president, on the other hand, testified that Tri-Aspen did not receive a drain design detail from the soils engineer when it built Graham's house in 1973 and that although he had seen numerous reports from the soils engineer, he never saw the disputed design detail attached to any such report until 1975. He stated that had such a design detail been included in the report it received, Tri-Aspen probably would have installed a peripheral drain. Tri-Aspen's president also testified that the decision not to install a drain was based on three considerations: 1) the fact that the engineer did not furnish a peripheral drain design; 2) the absence of free, standing

---

**4.** The trial court submitted the question of exemplary damages to the jury with the following instruction:

> If you find in favor of the Plaintiffs, WAYNE and CHERYL JOHNSON, and award them actual damages for their claim of negligence against Defendant, TRI-ASPEN CONSTRUCTION CO., then you should consider whether the Plaintiffs are entitled to exemplary damages. If you also find beyond a reasonable doubt that the injury complained of was attended by circumstances of willful and wanton disregard of the rights and feelings of the Plaintiffs, then in addition to any actual damages, you may also award the Plaintiffs a reasonable sum as exemplary damages.
>
> Exemplary damages are not to be construed as compensation to the Plaintiffs for wrong done, but as punishment to the Defendant, and as an example to others.

The court did not submit to the jury the alternative statutory standard that "the injury complained of is attended by circumstances of fraud, malice or insult." *See* § 13–21–102, 6 C.R.S. (1973).

water at the base of the foundation; and 3) Tri-Aspen's belief that all surface water could be directed away from the home through proper grading.

Tri-Aspen's president also testified that had Tri-Aspen decided to install a drain, Robert Graham, not Tri-Aspen, would have borne the additional cost of approximately $200 to $300. This evidence was corroborated by Graham's testimony. In addition, the contract between Graham and Tri-Aspen for the construction of the house was introduced into evidence. The contract provided an itemized listing of the building expenses to be paid by Tri-Aspen and those to be charged to Graham. The contract did not expressly state which party would have been responsible for the cost of a peripheral drain. Tri-Aspen's president testified that a peripheral drain is a "separate animal," built by a separate subcontractor, and, if built, would have been considered an "extra" or "add-on" expense because it was not covered by any of the categories of work outlined in the contract. "Add-on" expenses that Tri-Aspen did not consider in its original bid were charged to the Grahams, according to Tri-Aspen's president. The Johnsons offered no evidence to support a contrary conclusion.

The evidence relating to the Johnsons' claim for exemplary damages is conflicting, particularly as to whether Tri-Aspen ever received a detailed design for a peripheral drain. However, even after viewing this evidence in the light most favorable to the Johnsons, we conclude that it falls short of supporting a claim for exemplary damages. It simply does not demonstrate beyond a reasonable doubt that Tri-Aspen acted with an evil intent or wrongful motive, see *Frick v. Abell*,[5] or created and then purposefully disregarded a substantial risk of harm, see *Palmer v. A.H. Robins, Co.*, 684 P.2d at 215. The evidence was uncontradicted that Tri-Aspen had nothing to gain by failing to install a peripheral drain, and there is absolutely nothing in the record to indicate that Tri-Aspen wantonly and recklessly disregarded the Johnsons' rights and feelings. *See* § 13–21–102, 6 C.R.S. (1973).

▮ Viewed most favorably for the plaintiffs, the evidence establishes no more than that Tri-Aspen made a mistake, either by misreading or by misjudging the importance of the soils engineer's recommendation. A reasonable jury could, and did, find that Tri-Aspen acted negligently, and the Johnsons have received an award of actual damages to compensate them for the harm caused by Tri-Aspen's negligence. Conduct that is merely negligent, however, cannot serve as the basis for exemplary damages. *Frick v. Abell*, 198 Colo. at 511, 602 P.2d at 854. Because evidence demonstrating beyond a reasonable doubt the type of conduct that would support an award of exemplary damages is lacking in this case, the trial court should have directed a verdict for Tri-Aspen on that issue.

The judgment for exemplary damages against Tri-Aspen is reversed.

ROVIRA, J., specially concurs.

ROVIRA, Justice, specially concurring:

Two issues were raised by the Tri-Aspen Construction Company in its petition for certiorari. The first issue was whether the builder of a custom-built home which was constructed in accordance with plans and specifications provided by the owner may be held liable to a subsequent purchaser for negligent construction. The second issue was whether it was proper for the jury to award exemplary damages under the facts of this case.

The court denied review of the first issue. I would have granted. *See Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983) (Rovira, J., dissenting).

I believe that the court, by its refusal to consider the first issue, has allowed the ruling of *Cosmopolitan Homes* to expand far beyond the facts of that case.

I concur in the opinion of the court.

---

5. The trial court apparently recognized that there was no evidence of fraud, malice or insult, and instructed the jury on only the "wanton and reckless disregard" standard for exemplary damages. *See supra* note 4.