George Joseph **MILLER**, Plaintiff–Appellee and Cross–Appellant,

v.

**SOLAGLAS CALIFORNIA, INC.**, a California corporation; and **PPG Industries, Inc.**, a Pennsylvania corporation, Defendants–Appellants and Cross–Appellees.

No. 91CA1745.

Colorado Court of Appeals,
Div. III.

Oct. 7, 1993.

Rehearing Denied Nov. 12, 1993.

Certiorari Denied April 4, 1994.

James L. Gilbert & Associates, P.C., James L. Gilbert, Carrie R. Frank, Arvada, Londrigan, Potter & Randle, P.C., Thomas F. Londrigan, Springfield, IL, for plaintiff-appellee and cross-appellant.

Burg & Eldredge, P.C., Michael S. Burg, Peter W. Burg, Tom A. Van Buskirk, Den-

ver, for defendants-appellants and cross-appellees.

Opinion by Judge JONES.

In this personal injury action premised on theories of negligence and products liability, defendants, Solaglas California, Inc. (Solaglas) and PPG Industries, Inc., appeal the judgment entered on a jury verdict in favor of plaintiff, George Joseph Miller. Plaintiff cross-appeals the trial court's application of an offset for prior settlements to the damages assessed by the jury before adding prejudgment interest to the verdict. We affirm.

This action arises out of a 1982 automobile accident involving plaintiff. The vehicle involved in the accident, a 1980 General Motors Corporation (GMC) light-duty pickup truck, was sold new to a third-party buyer by a dealer on April 18, 1980. Three days after the sale, the buyer returned to the dealer to have a crack in the truck's windshield repaired. The dealer sent all of its warranty windshield repair work to a glass installation and replacement store owned by defendants. It was there that the windshield of the truck here involved was replaced on April 21, 1980.

On July 17, 1982, plaintiff borrowed the truck. As he approached an intersection, he observed that the traffic lights were not working. Although he reduced his speed, plaintiff proceeded through the intersection without stopping. The truck plaintiff was driving was hit in the left rear by another vehicle, causing the truck to rotate and then collide with the curb at the corner of the intersection, which knocked the right rear wheel off the truck. The truck then proceeded over the curb and struck a metal light pole. During the collisions, the windshield of the pickup truck popped out, and plaintiff, who was not wearing a seat belt, was ejected through the windshield opening and instantly rendered a quadriplegic.

In 1983, plaintiff brought an action against GMC, the truck dealer, and defendants, asserting theories of negligence and strict liability and seeking compensatory and punitive damages. GMC and the dealer each reached a settlement with plaintiff prior to the conclusion of the first trial in July 1986. The trial court did not instruct the jury on plaintiff's claim against defendants for strict liability, his claim for punitive damages was dismissed, and the jury, thereafter, found that defendants were negligent, but that their negligence was not a cause of plaintiff's injuries.

Plaintiff appealed the judgment entered in favor of defendants. A division of this court reversed the judgment and remanded the cause "for a new trial on all issues," including "the issue of liability and damages." *Miller v. Solaglas California, Inc.,* (Colo.App. No. 86CA1213, September 8, 1988) (not selected for official publication). Plaintiff did not appeal the trial court's failure to instruct the jury on his strict liability claims.

Upon remand, based on new evidence offered by plaintiff, the trial court granted plaintiff's motion to amend his complaint to include claims of products liability and negligence. Following the second trial in January and February 1991, the jury found defendants liable on both negligence and strict liability theories. The jury failed to find any comparative fault on the part of plaintiff and awarded him $2.6 million for economic damages, $2.5 million for mental pain and suffering, and $1 million for punitive damages. Before entering judgment, the trial court offset the damages assessed by the jury by the amount of the prior settlements and then added prejudgment interest to the resulting verdict. Defendants now appeal the trial court's judgment, and plaintiff cross-appeals the calculation of interest.

I.

Defendants first contend that the trial court erred in denying their motion to dismiss plaintiff's strict liability claim because it is barred by the doctrine of *res judicata.* Plaintiff asserts that defendants waived the defense of *res judicata* and that, in any case, the doctrine does not apply under the circumstances at issue here. We agree with plaintiff that defendants waived the defense of *res judicata.*

The trial court granted plaintiff's motion to strike defendants' affirmative defense of "law of the case" on the grounds that, in the first trial, the trial court had not actually dis-

missed plaintiff's strict liability claim, but instead had merely instructed the jury only on the claim of negligence. And, applying *Moore v. 1600 Downing Street, Ltd.,* 668 P.2d 16 (Colo.App.1983), the court reasoned that the rule of the law of the case is a discretionary rule of practice based on the policy that once an issue is decided that should be the end of the matter, but that it was inapplicable here since there was new evidence before the court. We perceive no abuse of discretion in that ruling.

On this appeal, defendants now assert for the first time that their affirmative defense of law of the case constituted sufficient notice to represent an assertion of, and to allow defendants to proceed with, the defense of *res judicata.*

■ In contrast to the concept of law of the case, the doctrine of *res judicata* provides that an existing final judgment on the merits is conclusive of the rights of the parties in a subsequent suit on the same claim as to all issues decided or that might have been decided. *City & County of Denver v. Consolidated Ditches Co.,* 807 P.2d 23 (Colo. 1991); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1974).

The Colorado Rules of Civil Procedure provide that *res judicata* is an affirmative defense to a claim of an opposing party and must be set forth affirmatively in a responsive pleading by the party relying on the defense. C.R.C.P. 8(C). Failure to plead an affirmative defense as required by C.R.C.P. 8(C), and failure to present evidence or argument on the matter in the trial court, precludes us from reviewing the issue. *Crocker v. Colorado Department of Revenue,* 652 P.2d 1067 (Colo.1982).

■ Here, defendants' answer to plaintiff's complaint failed to set forth the defense of *res judicata* and the trial court did not address the issue. Rather, the trial court confined its review to defendants' affirmative defense of law of the case, which is a significantly different affirmative defense than that of *res judicata. See 1B Moore's Federal Practice,* 0.404[4.3], at 131 (2d ed. 1991).

Under these circumstances, we decline to reverse the trial court's denial of defendants'

motion to dismiss plaintiff's products liability claim on this ground because defendants have waived their right to assert this claim on review. *See Crocker v. Colorado Department of Revenue, supra.*

## II.

Defendants next contend that the trial court erred in denying their motion for directed verdict as to plaintiff's product liability claim. The motion was based on their arguments that Solaglas did not manufacture or sell a "windshield retention system," as described in the jury instructions. Rather, they argue, Solaglas merely installed a non-defective replacement windshield using components from the original windshield. We find no error.

A products liability action may be brought against a manufacturer or a seller of a product for injury, death, or property damage resulting from "the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product. . . ." Section 13–21–401(2), C.R.S. (1987 Repl.Vol. 6A).

■ This doctrine of strict liability in tort imposes liability upon a manufacturer or seller for harm caused by a defective product which the manufacturer has placed into the stream of commerce without giving suitable and adequate warnings or instructions concerning the safe manner in which to use it. *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *Johnston v. Amsted Industries, Inc.,* 830 P.2d 1141 (Colo.App. 1992); *Bailey v. Montgomery Ward & Co.,* 690 P.2d 1280 (Colo.App.1984). *See also Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978) (manufacturer of component parts may be held liable for injuries to a consumer when they are expected to and do reach the consumer without substantial change in condition).

In addition, as to actions based upon strict liability, the following statutory provision applies:

No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any sell-

er of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer *unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective.* Nothing in this part 4 shall be construed to limit any other action from being brought against any seller of a product.

Section 13–21–402(1), C.R.S. (1987 Repl.Vol. 6A) (emphasis added).

The term "manufacturer," as used in § 13–21–402(1), is defined in § 13–21–401(1), C.R.S. (1987 Repl.Vol. 6A) as follows:

(1) *'Manufacturer' means a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller who has actual knowledge of a defect in a product* or a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product *or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.* The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer. A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or control, in some significant manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is. (emphasis added)

The trial court instructed the jurors that, in order for plaintiff to recover from defendants on his claim of sale of a defective product, they must find that "defendants were manufacturers of the windshield reten-

tion system." The court further instructed the jurors as follows:

A manufacturer means a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or a component of a product prior to the sale of the product to a user or consumer. The term includes any seller who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.

This instruction as to the definition of a "manufacturer" under strict liability properly conforms to the definition set forth in § 13–21–401(1).

■ Voluminous evidence was presented as to the nature of the windshield installation undertaken by Solaglas. And, although the record reflects that Solaglas did not manufacture the component parts of a windshield retention system including the pinchweld, rubber gasket, original windshield, and lock strip, all of which were designed and manufactured by GMC, and that Solaglas did not manufacture the replacement windshield which it installed in the vehicle driven by plaintiff, the record also reflects that the entire windshield retention system, as manufactured and sold by GMC, included a strip of urethane glue to seal the windshield. However, Solaglas used silicone, rather then urethane, to seal the windshield installed in the truck driven by plaintiff. Thus, the evidence shows that Solaglas sold a windshield retention system that differed significantly from the product manufactured and sold by GMC.

In alleging error, defendants' reliance upon the sales/service distinction applied in other jurisdictions is distinguishable as to these facts.

In *Hoover v. Montgomery Ward & Co., Inc.,* 270 Or. 498, 528 P.2d 76 (1974), the Oregon supreme court upheld the trial court's refusal to submit the issue of strict liability to the jury based on plaintiff's allegation that defendants had failed to tighten the lug nuts in the course of installing a new tire. The court declined to expand the doctrine of strict liability in tort to the negligent installation of a non-defective product because a

defective product was not supplied to the plaintiff. *See also Lemley v. J & B Tire Co.,* 426 F.Supp. 1378 (W.D.Pa.1977) (strict tort liability limited to defects in product supplied and does not include non-negligent mistakes in service); *DeLoach v. Whitney,* 275 S.C. 543, 273 S.E.2d 768 (1981) (strict liability does not include negligent installation of non-defective product); *Conger v. Teltech, Inc.,* 798 P.2d 279 (Utah App.1990) (no strict liability stemming from installation of non-defective spray balls); *cf. St. Luke's Hospital v. Schmaltz,* 188 Colo. 353, 534 P.2d 781 (1975) (hospital which furnished defective blood transfusion did not make sale of a product and was not liable under doctrine of strict liability). Thus, in the cases upon which defendants rely, strict liability in tort was held not to apply because a defective product was not supplied.

Here, there was sufficient evidence from which reasonable jurors could have concluded that the component parts of the windshield retention system constituted a "product" which Solaglas had prepared for sale to the truck consumer. *See* § 13–21–401(1), C.R.S. (1987 Repl.Vol. 6A). And, the jury was properly instructed as to the definition of a manufacturer under the products liability statute. Hence, reasonable jurors could have found that Solaglas had manufactured a defective windshield retention system.

Moreover, the trial court properly relied upon *Bailey v. Montgomery Ward & Co., supra,* in declining to direct a verdict against plaintiff on his product liability claim. In *Bailey,* plaintiffs alleged that defendant was strictly liable for defects in a tire resulting from its installation. The court found grounds for submission of the case to the jury based upon "evidence tending to show that safe use of a new tire requires installation of a new tube, and it is undisputed that defendant failed to warn plaintiffs of the potential consequences and dangers associated with installing a used tube in a new tire." *Bailey v. Montgomery Ward & Co., supra,* 690 P.2d at 1283. *See also O'Laughlin v. Minnesota Natural Gas Co.,* 253 N.W.2d 826 (Minn.1977) (subcontractor who purchased furnace and installed it in plaintiff's home could have been subjected to liability under strict liability theory if subcontractor defectively installed furnace without necessary parts). Hence, in *Bailey,* there was evidence tending to show that a defective product was supplied, which is consistent with the present case.

Accordingly, we perceive no error in the trial court's denial of defendants' motion for directed verdict on plaintiff's product liability claim. In view of this resolution, we additionally perceive no error in the trial court's instruction of the jury concerning a theory of negligence pertinent to manufacturers of products, rather than on general negligence principles.

### III.

Defendants further contend that the trial court erred in instructing the jury as to comparative fault in a products liability action. They argue that the comparative fault instruction issued by the trial court was an erroneous application of the products liability statute, that the trial court erroneously limited the jury's ability to consider the comparative fault of plaintiff by improperly instructing the jury on the application of seat belt evidence, and that the trial court erred in denying their motion for mistrial based on the jury's failure to find that plaintiff was contributorily negligent. We disagree.

### A.

Defendants contend that, as a matter of law, the trial court's comparative fault instruction erroneously restricted the jury's consideration of plaintiff's comparative fault as required by the products liability statute. Plaintiff maintains that the instruction appropriately conforms to model jury instructions. We agree with plaintiff.

Section 13–21–406, C.R.S. (1987 Repl.Vol. 6A), the products liability statute, requires the trier of fact in any products liability action to reduce a plaintiff's recovery by a percentage representing the amount of fault attributable to a plaintiff's own conduct. *States v. R.D. Werner Co.,* 799 P.2d 427 (Colo.App.1990).

The trial court accepted defendants' tendered comparative fault instruction, which, as

provided to the jury, appropriately conforms to *CJI–Civ.3d* 14:35 (1989). That instruction sets forth the applicable principles for comparative fault based on negligence as a defense to a products liability claim.

Defendants apparently argue that the trial court erred in failing to issue an additional instruction based on product misuse. *See CJI–Civ.3d* 14:22 (1992). However, defendants failed to tender any such instruction, nor does the language of § 13–21–406 suggest that such an instruction is required.

■ Under § 13–21–406, the definition of fault includes misuse, as well as a broad range of culpable behaviors including negligence. *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470 (10th Cir.1990). *See States v. R.D. Werner Co.*, *supra*. When an instruction on product misuse is neither tendered nor requested, we conclude that such an instruction is not required. *See, e.g., White v. Caterpillar, Inc.*, 867 P.2d 100 (Colo.App. 1993) (Criswell, J., specially concurring).

Accordingly, the trial court did not err in instructing the jury as to comparative fault in conformance with the pattern jury instruction.

### B.

■ Defendants also contend that the trial court erred in restricting the jury's ability to consider plaintiff's comparative fault by improperly instructing the jury that the effect of plaintiff's seat belt use was limited to a reduction of damages for pain and suffering. They argue that failure to wear a seat belt may limit damage awards in pure negligence cases, but that this defense should not be limited in products liability actions. We disagree.

Colorado's mandatory seat belt statute, § 42–4–236, C.R.S. (1993 Cum.Supp.), enacted in 1987, includes a provision limiting the effect of evidence of seat belt nonuse, as follows:

Evidence of failure to comply with the requirement of [mandatory seat belt use] shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for pain and suffering and shall not be used for limiting recovery of economic loss and medical payments.

Section 42–4–236(7), C.R.S. (1993 Cum. Supp.). In compliance with this statutory provision, the trial court instructed the jury, in relevant part, as follows:

You are not to consider this evidence in deciding the issue of liability (fault) on any of plaintiff's claims, but you may consider it only as it relates to plaintiff's mitigation of damages for pain and suffering, if any. Plaintiff's use of a seat belt shall not be used to reduce any other element of damages as set forth in the verdict forms.

In undertaking to determine whether the limitation on the use of seat belt evidence set forth in § 42–4–236(7) is applicable in a products liability action, our primary task is to ascertain and give effect to the intent of the General Assembly, looking first to the language of the statute itself, giving the statutory terms their commonly accepted meaning. *See People v. Guenther*, 740 P.2d 971 (Colo. 1987).

Upon its face, § 42–4–236(7) indicates that it is to be applied "in *any* subsequent litigation to recover damages for injuries resulting from the accident" (emphasis added). Hence, the statute evinces no intent on the part of the General Assembly to limit its application.

Support for this construction of the statute is also provided by its legislative history. In unsuccessfully moving to delete the language limiting mitigation of damages to only pain and suffering, Senator Donnelly explained that he wanted the jury to be able to make an adjustment whenever and however it may, including mitigation of an entire award. Senator Mendez responded that striking the limitation language would shift the burden of injury and loss to the victim. Hearings on S.B. 12 before Senate Judiciary Committee, 56th General Assembly, First Session (February 18, 1987). The Senator's response to the proposed motion, the defeat of the motion in committee on a vote of 1–6, and the defeat of a similar provision in the Senate by a floor

vote of 13–17, are indicative of an intent to limit the use of seat belt evidence strictly to the mitigation of damages, and further support an interpretation which applies the mitigation language to only pain and suffering damages in "any" litigation.

We, therefore, hold that § 42–4–236(7) applies in a products liability action only for the purpose of mitigating pain and suffering damages.

■ We decline to address defendants' contention that seat belt evidence should be admissible as evidence in support of a strict liability affirmative defense of assumption of the risk, as defendants failed to tender an instruction on this defense, and such an instruction is required for that particular claim. *See CJI–Civ.3d* 14:34 (1989).

Accordingly, the trial court did not err in this products liability action by instructing the jury as to seat belt evidence in conformance with § 42–4–236(7).

### C.

■ Defendants additionally contend that the trial court erred in denying their motion for mistrial based on the jury's failure to find that plaintiff was contributorily negligent. They argue that a reasonable jury was required to find that plaintiff was contributorily negligent based on the fact that he admitted to violation of a traffic ordinance in failing to stop at the intersection. We disagree.

The jurors were properly instructed that comparative fault is proved if they were to find, by a preponderance of the evidence, that negligent conduct by the plaintiff was a "cause" of the plaintiff's claimed injuries. *See CJI–Civ.3d* 14:35 (1989). Here, the jurors could have found that failure to come to a stop at the intersection, although negligent, was not a proximate cause of the accident and that plaintiff's injuries would have occurred anyway. Consequently, we perceive no grounds for reversal as to this issue.

### IV.

Defendants next contend that the trial court erred in denying their motion in limine to exclude Federal Motor Vehicle Safety Standard No. 212 (FMVSS 212) from evidence. They also contend that the trial court further erred by not instructing the jury that the standard was not applicable to Solaglas. We perceive no reversible error.

FMVSS 212 "establishes windshield retention requirements for motor vehicles during crashes." 49 C.F.R. § 571.212(s)(1) (1976). It requires manufacturers of specified vehicles to meet certain safety standards, which are to be verified through crash tests, and includes the provision that, in a 30 mph impact, "the windshield mounting of the vehicle shall retain not less than the minimum portion of the windshield periphery specified [in other subsections]." 49 C.F.R. § 571.-212(s)(5) (1976).

■ Safety codes and standards are admissible when offered in support of expert testimony and when introduced as objective safety standards generally recognized and accepted as such in the type of industry involved. *Pust v. Union Supply Co.*, 38 Colo.App. 435, 561 P.2d 355 (1977), *aff'd*, 196 Colo. 162, 583 P.2d 276 (1978); *see McComish v. DeSoi*, 42 N.J. 274, 200 A.2d 116 (1964).

Although this specific rationale for admission of safety standards was not applied in a similar case involving a van's windshield that "popped out" during an accident, the court in that case approved of the introduction of FMVSS 212 into evidence, despite the fact that the standard did not directly regulate the safety of the van's windshield retention system. *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833 (3d Cir.1981).

The *Seese* court allowed the standard into evidence for a limited purpose, instructing as follows:

In this regard I wish to caution you, however, that the mere failure to comply with the Standard is, itself, not evidence of any negligence on the part of the defendants herein, since that Standard did not apply to the accident vehicle at the time of manufacture. The Standard simply constitutes evidence which, together with all the other evidence before you with regard to the design of the windshield and window retention systems, can be taken into account by

you in assessing whether the defendants herein have breached their duty of care owed to the plaintiff.

*Seese v. Volkswagenwerk A.G., supra,* 648 F.2d at 846.

■ Here, the record reflects that FMVSS 212 properly served as the basis for expert testimony as to industry safety standards, *Pust v. Union Supply Co., supra,* and defendants failed to tender or request any limiting instructions. When evidence is admissible for one purpose and not another, the burden is on opposing counsel to object and request limitations on its admission. *Polster v. Griff's of America, Inc.,* 184 Colo. 418, 520 P.2d 745 (1974). Absent defendants' objection, we find no reversible error in the trial court's admission of the safety standard evidence.

## V.

Defendants further contend that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for exemplary damages. They argue that the evidence was insufficient, as a matter of law, to support a finding that plaintiff had proved beyond a reasonable doubt that Solaglas' conduct warranted the jury's award of $1 million in exemplary damages. We do not agree.

■ A jury may award reasonable exemplary damages in all actions in which damages are assessed and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct. Section 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A).

■ In order to recover exemplary damages under this statute, the plaintiff must show, beyond a reasonable doubt, that the act causing the injury was performed with an evil intent and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of the plaintiff's rights as to demonstrate a wrongful motive. *Pizza v. Wolf Creek Ski Development Corp.,* 711 P.2d 671 (Colo.1985); *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979).

■ "Wanton and reckless conduct" is conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences. *Tri–Aspen Construction Co. v. Johnson,* 714 P.2d 484 (Colo.1986); *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984). *See* § 13–21–102(1)(b), C.R.S. (1987 Repl.Vol. 6A).

It has been held that wanton conduct may be established by evidence that a defendant "knew or should have known" that the injury would probably result from his actions. *Pizza v. Wolf Creek Ski Development Corp., supra; Frick v. Abell, supra; Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6 (Colo.App.1986). *Cf. South Park Aggregates, Inc. v. Northwestern National Insurance Co.,* 847 P.2d 218 (Colo.App.1992). However, our supreme court appears to have endorsed "the more demanding requirement also appearing in *Frick v. Abell* that exemplary damages are justified when the injury-producing act was performed 'with such a wanton and reckless disregard of [the plaintiff's] rights as evidence a wrongful motive.'" *Tri–Aspen Construction Co. v. Johnson, supra,* 714 P.2d at 486 (fn. 3). *See CJI–Civ.3d* 9:32 (1988). Consequently, we decline to apply a "knew or should have known" standard in assessing whether a defendant's actions warrant an award of exemplary damages.

■ Whether the evidence is sufficient to justify an award of exemplary damages is a question of law. In assessing this question, a court must view the evidence in its totality and in a light most supportive of the jury's finding on the issue. *Tri–Aspen Construction Co. v. Johnson, supra; Frick v. Abell, supra.*

Moreover, in assessing a motion for a directed verdict as to exemplary damages, the motion can only be granted when the evidence compels the conclusion that the minds of reasonable persons could not be in disagreement that the burden of proof upon the party resisting the motion has been satisfied. "Absent evidence upon which a jury could justifiably base a verdict for the party opposing the motion, the trial court should take the case from the jury and enter judgment for

the moving party." *Tri–Aspen Construction Co. v. Johnson, supra,* 714 P.2d at 487.

The record supports defendants' contention that there is no evidence to indicate that they specifically *intended* to injure plaintiff by failing to utilize urethane upon installing truck windshields. *See Pizza v. Wolf Creek Ski Development Corp., supra.*

 However, unlike the case in *Tri–Aspen,* defendants here did not mistakenly install only a single windshield without the use of urethane. Rather, the evidence reflects that defendants had nearly three decades of world-wide experience in the glass replacement business and deliberately installed windshields without urethane as a matter of policy. Further, it reveals that they did so despite a GMC manual requiring the use of urethane when replacing a windshield, despite a NAGS Calculator parts list and price guide indicating that urethane could be required in windshield installation, despite industry publications and conventions discussing the use of urethane, and despite industry safety standards requiring the use of urethane. Plaintiff's evidence also showed that defendants' stores were told to charge for 2.8 hours of labor for installation of a windshield, but that such installation only took 30 minutes if urethane was not used.

Based upon the totality of the evidence, and viewed in a light most favorable to the verdict, we conclude that reasonable jurors could have found beyond a reasonable doubt that Solaglas' conduct in installing the windshield retention system created a substantial risk of harm to others and was purposefully performed with an awareness of the risk and in disregard of the consequences so as to constitute "wanton and reckless conduct." *See Tri–Aspen Construction Co. v. Johnson, supra; Palmer v. A.H. Robins Co., supra.*

Accordingly, we decline to reverse the trial court's denial of defendants' motions for a directed verdict and for judgment notwithstanding the verdict as to exemplary damages.

## VI.

Defendants also contend that the trial court erred in refusing to grant their motion for new trial based upon its ruling pursuant to C.R.C.P. 32(a)(3)(B) and (E) admitting video deposition testimony in lieu of live testimony. They additionally contend that the trial court erred in rejecting their request to consider their objections before showing the video and in leaving the courthouse during the viewing of the deposition testimony by the jury. We find no reversible error.

C.R.C.P. 32(a)(3) allows the introduction of a deposition, instead of live testimony, if the court finds "(B) that the witness is at a greater distance then one hundred miles from the place of trial or hearing ... unless it appears that the absence of the witness was procured by the party offering the deposition ... or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used," and if no valid objection has been made that the deposition in question would be inadmissible under the rules of evidence if the deponent were testifying live. *Stoczynski v. Livermore,* 782 P.2d 834 (Colo.App. 1989). *See* C.R.C.P. 32(b).

 This rule is subject to the underlying purpose of the judicial system to promote fairness and insure that "the battlefield remains level." The trial court has broad discretion, in fulfilling this obligation, to conduct the trial in such way as to protect the rights of both parties. This includes the responsibility to eliminate secrets and surprises. Accordingly, the trial court's rulings concerning the admission of depositions pursuant to C.R.C.P. 32 will not be disturbed absent an abuse of such discretion. *Stoczynski v. Livermore, supra,* 782 P.2d at 835.

The trial court found defendants' objection to admission of the video tape evidence to be untimely because plaintiff had filed his trial data certificate with the court on December 21, 1990, wherein he listed a certain witness and stated that the witness would give the testimony by video as expressed in his recent California deposition. The court also observed that the pretrial order required the

parties to file all pretrial motions on or before December 21, 1990.

Defendants did not file a pretrial motion objecting to the deposition or any part thereof. In its ruling, the trial court noted that, if defendants had been unable to file a pretrial motion objecting to the deposition testimony by December 21, "certainly they could have filed it shortly thereafter." The court held, consequently, that defendants' objection to the deposition evidence was untimely.

In addition, the trial court found the introduction of evidence by video deposition to be an exceptional circumstance under C.R.C.P. 32(a)(3)(E) because: at the time that the deposition was taken, the deponent was more than 100 miles from the court; the plaintiff went to great lengths to take the video deposition, having traveled to California; and notice had been given that the witness' deposition was taken by video tape, and "[c]ertainly that is notice that the deposition may be used at trial or may be requested to be used at trial."

■ We conclude that timely notice, in a trial data certificate, of the intent to call a witness by way of video deposition constitutes appropriate "application and notice" under the rule. C.R.C.P. 32(a)(3)(E). Thus, the trial court did not err in overruling defendants' objections to the video deposition evidence concerning the issue of application and notice.

■ Furthermore, considering the totality of the circumstances, including that plaintiff was required to undertake an expensive ancillary proceeding resulting in a California court issuing a subpoena to compel the witness to attend the deposition in California, resulting in costs to plaintiff of $14,411, we conclude that it was in the interests of justice for the trial court here to allow the introduction of the evidence. *See* C.R.C.P. 32(a)(3)(E).

The record additionally supports the trial court's findings as to admission of the deposition on the basis that defendants' objections were untimely and because of the exceptional circumstances in this case. The evidence reflects that defendants were aware that plaintiff had affirmed his intent to present the video deposition on several occasions before trial but failed to raise any objections to the deposition testimony until it was actually offered at trial.

Considered in their entirety, these circumstances preclude us from finding an abuse of the trial court's discretion in admitting the video deposition testimony pursuant to C.R.C.P. 32.

■ Moreover, even if, *arguendo*, the trial court's admission of the video deposition on the bases stated constitute error, we determine that such error is harmless.

First, the record shows that witness' testimony to be brief and cumulative, within the context of a two-week trial. *See Sentinel Petroleum Corp. v. Bernat*, 29 Colo.App. 109, 478 P.2d 688 (1970).

Secondly, defendants, having brought the witness to Colorado on the eve of trial, had the opportunity to call him for live testimony. During such live testimony, they could have attempted to have the witness disclaim his deposition testimony and, thus, critically impeach him.

Thirdly, defendants failed to present an offer of proof as to how the witness' live testimony would have differed from the video deposition testimony. Thus, the record plainly reveals that defendants were not prejudiced by the court's ruling allowing the video deposition testimony and reversal is not warranted thereupon.

■ We decline to consider defendants' additional contention of error as to the trial court's refusal to consider the objections they made during the course of the deposition. Defendants failed to raise any specific objection at trial, thereby precluding our consideration upon appeal.

Finally, in *People v. Garcia*, 826 P.2d 1259 (Colo.1992) our Supreme Court opined that the absence of the trial judge over a party's objection during the presentation of evidence is grounds for reversal. However, if the judge was absent "with the consent of counsel when the videotapes were shown to the jury, the error would be harmless." *People v. Garcia*, 826 P.2d at 1266.

Here, defendants' stipulation that the trial court's presence was unnecessary in the courtroom while a video deposition was viewed by the jury now precludes our consideration of the propriety of this procedure.

Accordingly, we find no reversible error in the trial court's admission of the video deposition testimony and its refusal to grant defendants' motion for new trial based upon that admission.

## VII.

■■ On cross-appeal, plaintiff contends that the trial court erred in calculating prejudgment interest. He argues that the trial court improperly deducted amounts from prior settlements with joint tortfeasors from the jury's damage award before adding interest to the award. We disagree.

A panel of this court has previously held that amounts received as proceeds of a settlement must be deducted before adding statutory interest. *McKown–Katy v. Rego Co.,* 776 P.2d 1130 (Colo.App.1989), *rev'd in part on other grounds,* 801 P.2d 536 (Colo.1990). *See Gutierrez v. Bussey,* 837 P.2d 272 (Colo. App.1992); *Martinez v. Jesik,* 703 P.2d 638 (Colo.App.1985). We view the *McKown–Katy* holding as dispositive here.

Accordingly, we conclude that the trial court properly offset the jury's damages award by prior settlements before adding prejudgment interest to the award.

The judgment of the trial court is affirmed.

TURSI and ROTHENBERG, JJ., concur.