[No. S056618. May 10, 1999.]

PPG INDUSTRIES, INC., Plaintiff and Appellant, v.
TRANSAMERICA INSURANCE COMPANY, Defendant and Appellant.

## Counsel

Troop Steuber Pasich Reddick & Tobey, Troop Meisinger Steuber & Pasich, Kirk A. Pasich and Lori M. Yankelevits for Plaintiff and Appellant.

Haines & Lea, Haines, Brydon & Lea, John R. Brydon, James G. Boedecker and James E. Gibbons for Defendant and Respondent.

Musick, Peeler & Garrett, Harry W. R. Chamberlain II and Mary Catherine M. Bohen for Lawyers' Mutual Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

Kravit, Gass & Weber, J. Ric Gass; Carroll, Burdick & McDonough and Bertrand LeBlanc II for American Empire Surplus Lines Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

## Opinion

**KENNARD, J.**—In each policy of liability insurance, California law implies a covenant of good faith and fair dealing. This implied covenant obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured. If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach.

Here, a third party brought a personal injury action against the insured resulting in a judgment against the insured that included an award of punitive damages based on the insured's egregious misconduct. The insured then sued its insurance company to recover as compensatory damages the amount of the punitive damages, which the insured alleged were proximately caused by insurance company's unreasonable failure to settle the third party's lawsuit against the insured. Although the insurance company's alleged negligent failure to settle the third party lawsuit was a cause in fact of the punitive damages awarded against the insured, it was not a proximate cause of those damages. We therefore conclude that the insured in this case cannot shift to the insurance company its responsibility for the punitive damages.

## I.

Plaintiff PPG Industries, Inc. (PPG) is the successor in interest to Solaglas California, Inc. (Solaglas). Solaglas was a distributor and installer of replacement windshields for cars and trucks. On July 17, 1982, in Colorado, George Miller was driving a truck manufactured by General Motors Corporation (GMC) when another vehicle collided with the left rear of the truck, causing it to jump a curb and strike a metal light pole. The truck's windshield, which had been installed by a Solaglas facility in Colorado, "popped out" and Miller was ejected through the opening. The resulting injuries rendered Miller a quadriplegic.

Miller sued Solaglas in Colorado, seeking both compensatory and punitive damages. Solaglas tendered the defense to its liability carrier, Transamerica Insurance Company (Transamerica), which had issued policies totaling $1.5 million. Transamerica agreed to defend Solaglas, but it informed Solaglas that the insurance policies did not provide indemnity coverage for punitive damages.

Settlement efforts were unsuccessful, and a jury trial in Colorado resulted in a judgment for Solaglas, but this judgment was reversed on appeal. Miller then offered to settle for an amount within the limits of Solaglas's liability coverage. Transamerica turned down Solaglas's requests to accept the settlement offer. Thereafter, a second jury trial resulted in a judgment against Solaglas for $6.1 million ($5.1 million in compensatory damages and $1 million in punitive damages). Solaglas appealed.

With respect to the $1 million punitive damages, the Colorado Court of Appeal rejected Solaglas's contention that the evidence was insufficient to support the award. (*Miller* v. *Solaglas California, Inc.* (Colo.Ct.App. 1993)

870 P.2d 559.) The court determined that "reasonable jurors could have found beyond a reasonable doubt that Solaglas' conduct in installing the windshield retention system created a substantial risk of harm to others and was purposefully performed with an awareness of the risk and in disregard of the consequences so as to constitute 'wanton and reckless conduct.' " (*Id.* at p. 569.) In making this determination, the court relied on evidence that Solaglas had adopted a standard practice of installing replacement windshields using silicone instead of urethane "despite a GMC manual requiring the use of urethane when replacing a windshield, despite a NAGS Calculator parts list and price guide indicating that urethane could be required in windshield installation, despite industry publications and conventions discussing the use of urethane, and despite industry safety standards requiring the use of urethane." (*Ibid.*) The court also noted that installing a windshield without a urethane seal would take only 30 minutes, yet Solaglas had instructed its stores to charge for 2.8 hours of labor for such installation. (*Ibid.*)

Transamerica paid the policy limits of $1.5 million plus $1,277,094.88 as costs and interest on the judgment against Solaglas in the Miller lawsuit. Industrial Indemnity Company, which had insured Solaglas for $9 million in excess liability coverage, paid the remaining $3.6 million in compensatory damages, leaving PPG, Solaglas's successor in interest, to pay the $1 million in punitive damages.

In June 1994, PPG sued Transamerica in Los Angeles, California, for breach of the covenant of good faith and fair dealing implied in each of Transamerica's policies. PPG alleged that Transamerica had breached the covenant by unreasonably refusing to settle the Miller lawsuit; PPG sought to recover from Transamerica as compensatory damages the $1 million it had been ordered to pay as punitive damages in the Miller lawsuit.

The trial court granted summary judgment for Transamerica, relying on the well-established rule prohibiting indemnity coverage for punitive damages awarded against the insured. The Court of Appeal affirmed the judgment. We granted PPG's petition for review.

## II.

Implied in every contract is a covenant of good faith and fair dealing that neither party will injure the right of the other to receive the benefits of the agreement. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) This covenant imposes a number of obligations upon insurance companies, including an obligation to

accept a reasonable offer of settlement. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173].) An insurer's breach of the implied covenant of good faith and fair dealing "will provide the basis for an action in tort." (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 684 [254 Cal.Rptr. 211, 765 P.2d 373].) Because breach of the implied covenant is actionable as a tort, the measure of damages for tort actions applies, and the insurance company generally is liable for "any damages which are the proximate result of that breach." (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 925 [148 Cal.Rptr. 389, 582 P.2d 980]; accord, Civ. Code, § 3333; *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796].)

██ Here, PPG contends it is entitled to recover from its insurance company any monetary award, including punitive damages, that it became legally obligated to pay in the Miller lawsuit. According to PPG, settlement would have terminated that lawsuit, thus precluding any punitive damage liability, and therefore the insurer's failure to settle the lawsuit was a proximate cause of the award of punitive damages. Not so. As we shall explain, Transamerica's failure to settle the Miller lawsuit was a cause in fact but not a *proximate cause* of the award of punitive damages.

██ Proximate cause involves *two* elements. (*Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1049 & fn. 4 [1 Cal.Rptr.2d 913, 819 P.2d 872].) One is *cause in fact.* An act is a cause in fact if it is a necessary antecedent of an event. (Prosser & Keeton on Torts (5th ed. 1984) § 41, p. 265.) ██ Here, there were at least *two* causes in fact of the insured's liability for punitive damages in the third party lawsuit: the insured's own intentional and egregious misconduct in installing the windshield on the truck, and the insurance company's alleged negligence in failing to settle the third party lawsuit, on the theory that settlement would not have exposed PPG to liability for punitive damages.

To simply say, however, that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable. In the words of Prosser and Keeton: "[T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.'" (Prosser & Keeton on Torts, *supra,* § 41, at p. 264, quoting *North* v. *Johnson* (1894) 58 Minn. 242.) ██ Therefore, the law must

impose limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy. (Prosser & Keeton on Torts, *supra,* § 41, at p. 264.) ■■ As Justice Traynor observed, proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." (*Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 221 [157 P.2d 372, 158 A.L.R. 872] (conc. opn. of Traynor, J.).)

In this case, there are at least three policy considerations that strongly militate against allowing the insured, the morally culpable wrongdoer in the third party lawsuit, to shift to its insurance company the obligation to pay punitive damages resulting from the insured's egregious misconduct in that lawsuit.[1]

*First,* there is the policy of not allowing liability for intentional wrongdoing to be offset or reduced by the negligence of another. (See, e.g., 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1057, pp. 454-455; Rest.2d Torts, § 481; Prosser & Keeton on Torts, *supra,* § 65, at p. 462; *id.,* § 67, at pp. 477-478.) In both Colorado and California, punitive damages may be awarded only if it is proven that the defendant engaged in conduct intended to cause injury or engaged in despicable conduct with a conscious disregard of the rights or safety of others. (Civ. Code, § 3294, subds. (a), (c); *Miller* v. *Solaglas California, Inc., supra,* 870 P.2d at p. 568.) Accordingly, punitive damages awarded under Colorado law are equivalent in all relevant respects to punitive damages awarded under California law. Here, the Colorado jury's award of punitive damages in the third party action against the insured was based on the insured's own intentional, morally blameworthy behavior in installing the windshield in the truck. By contrast, the action that the insured, PPG, then brought against its insurance company, Transamerica, was based on Transamerica's alleged negligent failure to settle the third party lawsuit against the insured in Colorado. Such a cause of action is based not on a bad faith breach of the insurance contract but on the "failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 430; see *Johansen* v. *California State Auto. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 16, fn. 5 [123 Cal.Rptr. 288, 538 P.2d 744].) Thus,

---

[1]The dissent implies that it is somehow unfair or improper to require PPG, the successor in interest to Solaglas, to bear the consequences of misconduct by Solaglas. (Dis. opn., *post,* at p. 323.) PPG made a similar argument in the Court of Appeal, which rejected it: PPG could not accept the benefits of its acquisition of Solaglas by bringing this action to recover under Solaglas's insurance policy with Transamerica without also accepting the liabilities. PPG does not challenge this determination by the Court of Appeal.

allowing PPG to shift to Transamerica its responsibility to pay the punitive damages in the third party action would violate the public policy against reducing or offsetting liability for intentional wrongdoing by the negligence of another.

*Second,* the purposes of punitive damages, in both California and Colorado, are to punish the defendant and to deter future misconduct by making an example of the defendant. (Civ. Code, § 3294, subd. (a) [in California, punitive damages are "damages for the sake of example and by way of punishing the defendant"]; *Lira* v. *Shelter Ins. Co.* (Colo. 1996) 913 P.2d 514, 517 [giving a similar explanation of punitive damages under Colorado law].) If we were to allow the intentional wrongdoer, here the insured, to shift responsibility for its morally culpable behavior to the insurance company, which surely will pass to the public its higher cost of doing business, we would defeat the public policies of punishing the intentional wrongdoer for its own outrageous conduct and deterring it and others from engaging in such conduct in the future.[2] As we explained in a previous case: " ' "The policy considerations in a state where, as in [California], punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole." ' " (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 157, fn. 4 [181 Cal.Rptr. 784, 642 P.2d 1305], quoting *Northwestern National Casualty Company* v. *McNulty* (5th Cir. 1962) 307 F.2d 432, 440-441; see *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 39-42 [151 Cal.Rptr. 494].)

*Third,* our public policy prohibits indemnification for punitive damages.[3] (See, e.g., Ins. Code, § 533; *Peterson* v. *Superior Court, supra,* 31 Cal.3d at p. 157; *City Products Corp.* v. *Globe Indemnity Co., supra,* 88 Cal.App.3d at

---

[2]We recognize that a settlement of the underlying action would relieve the insured of personal liability for its own acts of intentional egregious conduct giving rise to a claim for punitive damages. As the highest court of the State of New York has observed: "Our system of civil justice may be organized so as to allow a wrongdoer to escape the punitive consequences of his own malfeasance in order that the injured plaintiff may enjoy the advantages of a swift and certain pretrial settlement. However, the benefit that a morally culpable wrongdoer obtains as a result of this system, i.e., being released from exposure to liability for punitive damages, is no more than a necessary incident of this process." (*Soto* v. *State Farm Ins. Co.* (1994) 83 N.Y.2d 718 [613 N.Y.S.2d 352, 635 N.E.2d 1222, 1225].)

[3]As if stating an established rule, the dissent asserts that in "effecting a settlement, the insurer is not prohibited from offering a sum to avoid punitive damages as well as compensatory damages." (Dis. opn., *post,* at p. 321.) But a recent decision, *J.B. Aguerre, Inc.* v.

pp. 39-41.) The State of Colorado, where the judgment against PPG was rendered, has the same public policy. (*Lira* v. *Shelter Ins. Co., supra,* 913 P.2d at p. 517.) Indemnity, which may be express, implied, or equitable, is "defined as the obligation resting on one party to make good a loss or damage another party has incurred." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97]; accord, *E.L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505]; *Maryland Casualty Co.* v. *Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 864 [41 Cal.Rptr.2d 519].) To require Transamerica to make good the loss PPG incurred as punitive damages in the third party lawsuit would impose on Transamerica an obligation to indemnify, a violation of the public policy against indemnification for punitive damages.[4]

Here, the punitive damages in the third party lawsuit were awarded not against the insurance company for its unreasonable failure to settle that lawsuit, but against the insured for the insured's *own* morally reprehensible

---

*American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6 [68 Cal.Rptr.2d 837] (*Aguerre*), concluded to the contrary, and we denied review in that case.

In a footnote, the dissent asserts that *Aguerre* actually supports its position because the *Aguerre* court stated that an insurer must "cooperate" with the insured's efforts to settle a punitive damages claim against it. (Dis. opn., *post,* at p. 321, fn. 2.) On the contrary, *Aguerre* makes clear that the insurer's required cooperation does *not* extend to offering any amount in settlement of a punitive damages claim. The court there stated: "In any event, we do not think [the insurance company] was obligated to increase its settlement offer, beyond its evaluation of compensatory damage exposure, to pay [plaintiffs] additional moneys to relinquish their punitive damage claims. [Insured] has not cited a case requiring this. The rule . . . is that an insurer is not obligated to indemnify against punitive damages. The same public policy which forbids an insurer from paying punitive damages in a judgment should likewise bar its payment of such damages, or some part thereof, in a settlement." (*Aguerre, supra,* 59 Cal.App.4th at p. 16.) The court added that "there are no allegations here to show that [the insurer] in any way obstructed or refused to cooperate *with* [the insured's] *negotiation of its contribution to the settlement.*" (*Id.* at p. 17, italics added.) Thus, *Aguerre* does not support the dissent's position that an insurer either must or may pay an amount in settlement for punitive damages.

In any event, the issue of the scope of an insurance company's duty in evaluating settlement offers is not before us. The trial court here concluded that irrespective of whether Transamerica's refusal to settle was unreasonable, as a matter of law PPG could not recover from Transamerica the punitive damages awarded against Solaglas in the Miller lawsuit. For the same reason that it was unnecessary for the trial court to reach the issue of whether Transamerica unreasonably failed to settle, so too is it unnecessary for us to do so.

[4]PPG cites a federal decision, *Carpenter* v. *Automobile Club Interinsurance Exch.* (8th Cir. 1995) 58 F.3d 1296, in support of its argument that the public policy against indemnification for punitive damages does not preclude an insured from recovering such damages from the insurance company when the latter has unreasonably failed to settle a third party lawsuit against the insured. But the federal court in *Carpenter* did not address this issue. (*Id.* at pp. 1301-1302.) Also, Arkansas, whose law the federal court was applying in *Carpenter,* does not have a public policy against indemnification for punitive damages. (*Southern Farm Bureau Casualty Ins. Co.* v. *Daniel* (1969) 246 Ark. 849 [440 S.W.2d 582, 583].)

behavior in installing the windshield on the truck.    ▆    In an appropriate case, an insurance company's *own* egregious misconduct may justify an award of punitive damages against it. For example, if in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious, the insured may recover punitive damages from the insurance company. (See, e.g., Civ. Code, § 3294, subd. (a); *Egan* v. *Mutual of Omaha, Ins.* (1979) 24 Cal.3d 809, 819-822 [169 Cal.Rptr. 691, 620 P.2d 141]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462-463 [113 Cal.Rptr. 711, 521 P.2d 1103].) That issue is not presented here.

### III.

▆    To summarize, we agree with the highest courts of New York (*Soto* v. *State Farm Ins. Co., supra,* 635 N.E.2d 1222) and Colorado (*Lira* v. *Shelter Ins. Co., supra,* 913 P.2d 514) that an insured may not shift to its insurance company, and ultimately to the public, the payment of punitive damages awarded in the third party lawsuit against the insured as a result of the insured's intentional, morally blameworthy behavior against the third party. To allow such recovery would (1) violate the public policy against permitting liability for intentional wrongdoing to be offset or reduced by the negligence of another; (2) defeat the purposes of punitive damages, which are to punish and deter the wrongdoer; and (3) violate the public policy against indemnification for punitive damages.

The judgment of the Court of Appeal is affirmed.

Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

In affirming the judgment of the Court of Appeal, which affirmed the judgment of the superior court, the majority favor Transamerica Insurance Company, an insurer, over PPG Industries, Inc., its insured, in a dispute about liability insurance. The result, however, is to favor *all* insurers over *all* their insureds. I cannot join such an opinion.

### I

Under a liability insurance policy, which is manifestly a contract, an insurer makes promises, and its insured pays premiums, the one in consideration for the other, against the risk of loss. (See, e.g., *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

Under the terms of such a policy, the insurer has a duty to defend its insured against damages for a covered claim by a victim of the insured. (See, e.g., *Buss* v. *Superior Court, supra,* 16 Cal.4th at pp. 45-46.) The insurer also has a duty to indemnify its insured, to a specified limit, for those sums that its insured becomes legally obligated to pay *its* victim as damages for a covered claim. (See, e.g., *id.* at p. 45.) Such sums, of course, include damages to compensate the insured's victim—namely, compensatory damages. But they do *not* include damages to punish the insured itself for any oppressive, fraudulent, or malicious conduct on its part—namely, punitive damages. So has it been held as a matter of law. (See, e.g., *J.B. Aguerre, Inc.* v. *American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 14 [68 Cal.Rptr.2d 837].)[1] The purpose of punitive damages is, as implied, to punish a wrongdoer for any such oppressive, fraudulent, or malicious conduct in which it may have engaged in the past, and also to deter the wrongdoer, and others as well, from engaging in similar conduct in the future. (E.g., 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1327, p. 785; see generally, *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305].)

The insurer's duty to defend its insured, which arises at tender (*Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 46), is of no lesser significance as a legal matter than its duty to indemnify it, which arises after establishment of liability (*ibid.*). Neither is it of any lesser significance as a practical matter. It has been stated: "The insured's desire to secure the right to call on the insurer's superior resources for the defense of . . . claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score." (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) This is true when the insured is an individual man or woman. It is also true when the insured is a business entity. Indeed, the functioning of a free and open market in contemporary society demands no less.

Pursuant to the covenant of good faith and fair dealing, which is implied by law in every liability insurance policy (e.g., *Comunale* v. *Traders &*

---

[1]See section 533 of the Insurance Code: "An insurer is not liable for a loss caused by the wilful act of the insured . . . ." Although often cited together with the foregoing, section 1668 of the Civil Code—providing that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law"—has been held inapplicable to liability insurance policies. (See, e.g., *State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 966-967 [267 Cal.Rptr. 379].)

*General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883]), the insurer has a duty to make reasonable efforts to settle a claim against its insured by the insured's victim (e.g., *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940-941 [132 Cal.Rptr. 424, 553 P.2d 584]; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14-15 [123 Cal.Rptr. 288, 538 P.2d 744]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173])—which accords with the public policy favoring settlement (e.g., *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 803 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083] (dis. opn. of Bird, C. J.)). The insurer's duty to settle arises from its interrelated duty to defend. (See, e.g., *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 660.) In discharging its duty to settle, the insurer must give at least as much weight to its insured's interests as to its own (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 429; *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 659), and must act as though it alone would have to bear any ensuing judgment (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 16). In effecting a settlement, the insurer is not prohibited from offering a sum to avoid punitive damages as well as compensatory damages.[2] Nor could it be. Otherwise, it would effectively be prohibited from offering any sum whatsoever for many claims. That is

---

[2]Curiously, the majority assert that *J.B. Aguerre, Inc.* v. *American Guarantee & Liability Ins. Co., supra,* 59 Cal.App.4th 6, "conclude[s] to the contrary . . . ." (Maj. opn., *ante,* at p. 317, fn. 3.) Not so. It is one thing for the insurer to *indemnify* its insured for punitive damages, which necessarily follows the establishment of liability therefor. It is quite another for it to offer a sum to *avoid* punitive damages on its behalf, which necessarily precedes such an event. *Aguerre* appears to recognize the distinction. It states that the "insurer, though not liable to indemnify against punitive damages, must reasonably assist and cooperate with the insured in defending and settling punitive damages claims." (*J.B. Aguerre, Inc.* v. *American Guarantee & Liability Ins. Co., supra,* 59 Cal.App.4th at p. 15.) It similarly states that, although the insurer is "not obliged to pay compensation for punitive damages in a settlement, it [is] required, as part of its duty to defend, to accommodate and cooperate in any effort by [the insured] to buy peace from the punitive damage claims by contributing to the settlement." (*Id.* at p. 17.) But it does not imply that the insurer may ignore any threat of punitive damages against its insured. It is settled that the insurer must take into account its insured's exposure to compensatory damages beyond the policy limits, and must act accordingly: "When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer"—at least as a general matter—"to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing." (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 659.) By parity of reasoning, the insurer must take into account its insured's exposure to punitive damages, which are, as it were, beyond the policy itself, and must act accordingly: "When there is great risk of a recovery" of punitive damages "so that the most reasonable manner of disposing of the claim is a settlement which can be made within [the policy] limits, a consideration in good faith of the insured's interest requires the insurer"—again, at least as a general matter—"to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing." (*Ibid.*)

because many claims seek punitive damages as well as compensatory damages. For it is easy to allege oppressive, fraudulent, or malicious conduct. It may indeed be difficult to prove such conduct. But it is also difficult to predict with any confidence what any given trier of fact may find in the premises.

If the insurer breaches its duty to settle the claim of its insured's victim, it commits a tort against its insured, at least if its breach is "wrongful." (*Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d at p. 663; accord, e.g., *Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d at pp. 432-433.) And if it commits such a tort, it is liable to it for damages to compensate for all the detriment that it proximately caused. (E.g., *Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d at p. 433.) Such detriment includes—but is not limited to (see, e.g., *id.* at pp. 433-434)—any sums that its insured became legally obligated to pay *its* victim as damages for its claim. (E.g., *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau*, *supra*, 15 Cal.3d at pp. 12-17; *Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d at pp. 658-661.) The damages for which the insurer is liable are not affected in their amount by any limits on indemnification specified in any liability insurance policy. (E.g., *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau*, *supra*, 15 Cal.3d at pp. 12-17; *Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d at pp. 658-661.) That is because they do not constitute indemnification, which, as section 2772 of the Civil Code makes plain, comprises payment that is required under the terms of a liability insurance policy itself. Rather, as the very name declares, they are damages, which comprise payment that is compelled by law. The "principle[s]" that operate here are "[f]undamental in our jurisprudence." (*Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d at p. 433.) Section 3523 of the Civil Code sets out as a maxim of jurisprudence, in the nature of public policy, that "[f]or every wrong there is a remedy." Section 3274 of the Civil Code implies that the "remedy" for a tort is generally "compensation." For its part, section 3281 of the Civil Code implies that compensation for a tort is "in money, which is called damages." Lastly, section 3333 of the Civil Code states that the "measure of damages" for a tort is generally the "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Inasmuch as the insurer is liable to its insured for damages to compensate for *all* the detriment that it proximately caused by its tortious breach of its duty to settle the claim of the insured's victim, and inasmuch as such detriment includes *any* sums that its insured became legally obligated to pay *its* victim as damages for its claim, it follows that the insurer is liable to the insured for damages to compensate for detriment in the form of the sum that

its insured became legally obligated to pay *its* victim as *punitive damages* as well as *compensatory damages*. Otherwise, for the wrong the insured suffered at its insurer's hands, there would not be a remedy, or at least not a complete remedy.

## II

The majority, however, conclude to the contrary, to the effect that an insurer, including specifically Transamerica, is not liable to its insured, including specifically PPG, for damages to compensate for detriment in the form of the sum that its insured became legally obligated to pay *its* victim as punitive damages. At first glance, their discussion seems not unattractive. But, on sustained scrutiny, it shows itself otherwise.

The majority's conclusion *against PPG itself* carries a certain rhetorical appeal. Who would be well-disposed to a firm whose conduct is referred to, time and again, as "egregious" and "outrageous" and "morally culpable" and "morally reprehensible"? No one. Until, that is, he has considered the matter more carefully. For, in factual truth, if not in legal fiction, the conduct in question was *not* that of PPG, but rather Solaglas California, Inc., subsequently known as Solaglas USA, Inc., a completely separate and independent firm whose stock PPG purchased several years later.

The majority's conclusion *against the insured as such* rests on the familiar notion of proximate cause, which they import from the law of negligence. They quote the observation of then Justice Traynor, that proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of [public] policy that limit an actor's responsibility for the consequences of his conduct." (*Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 221 [157 P.2d 372, 158 A.L.R. 872] (conc. opn. of Traynor, J.).) But they fail to quote Witkin, that such considerations are those that would make it *"unjust* to hold" the actor "legally responsible." (6 Witkin, Summary of Cal. Law, *supra*, Torts, § 968, p. 359, italics added.) Considerations of this sort are altogether absent here. For it is hardly unjust to hold the insurer legally responsible for *all* damages to its insured. That is because *no* damages would have arisen had it not tortiously breached its duty to settle.

In support of their conclusion against the insured as such, the majority present three points. None, as will appear, proves to bear any persuasive force.

First, the majority assert that to recognize the insurer's liability to its insured for punitive damages "would . . . violate the public policy against

permitting liability for intentional wrongdoing to be offset or reduced by the negligence of another . . . ." (Maj. opn., *ante*, at p. 319.) It would not. Indeed, it would not even implicate it at all. The identified public policy operates by comparing the relative culpability of the plaintiff and the defendant within a single action—for example, the culpability of the insured's victim vis-à-vis the culpability of the insured itself in an action brought by the former against the latter for bodily injury and property damage. It does *not* operate, however, by comparing the relative culpability of the defendants in two separate actions—for example, the culpability of the insured in an action brought against it by its victim for bodily injury and property damage vis-à-vis the culpability of the insurer in an action brought against *it* by its insured for tortious breach of its duty to settle. As stated, section 3523 of the Civil Code declares that "[f]or *every* wrong there is a remedy." (Italics added.) That means for the insured's wrong against its victim. And also for the insurer's wrong against its insured.

Second, the majority assert that to recognize the insurer's liability to its insured for punitive damages "would . . . defeat the purposes of" such damages, "which are to punish and deter the wrongdoer . . . ." (Maj. opn., *ante*, at p. 319.) It would not. Such liability would not be inconsistent with deterrence. Surely, it is inconceivable that the insured would be enticed to engage in oppressive, fraudulent, or malicious conduct on the speculation that its insurer might perhaps tortiously breach its duty to settle, and then might perhaps be held liable to it for damages therefor. In addition, such liability would not be inconsistent with punishment. It would cover only the insured's out-of-pocket costs attributable to the payment of punitive damages. It would not reach various related opportunity and transaction costs, which are always real in fact if not certain in law. Opportunity costs are often substantial. Time passes, usually several years, between the insured's payment of punitive damages to its victim and its insurer's payment of damages to the insured itself compensating therefor. Often substantial as well are transaction costs. "[A]ny litigation involves transaction costs," which "are not limited to the monetary costs of the litigation" itself, "but also include the toll the litigation takes" on the insured. (*Grimm* v. *Leinart* (6th Cir. 1983) 705 F.2d 179, 183, fn. 4.) Litigation that threatens the insured with punitive damages and ultimately makes good on the threat involves transaction costs greater still. In light of such opportunity and transaction costs, punishment and deterrence perdures. In any event, a payment in settlement avoids punitive damages at the outset. By doing so, it may be said to "defeat the purposes of punitive damages" even more completely, since it obviates any and all opportunity and transaction costs that would subsequently be incurred by the "wrongdoer." (Maj. opn., *ante*, at p. 319.) Nevertheless, as the majority themselves admit, it is not prohibited.

Third, the majority assert that to recognize the insurer's liability to its insured for punitive damages "would . . . violate the public policy against indemnification for" such damages. (Maj. opn., *ante*, at p. 319.) It would not. Indeed, it would not even implicate it at all—and certainly no more so than the public policy favoring settlement of the underlying claim. The insurer's payment to its insured is not *indemnification*, inasmuch as it is not required under the terms of any liability insurance policy. It is rather *damages*, inasmuch as it is compelled by law. To be sure, a payment of this sort *makes up for* punitive damages. But, as stated, a payment in settlement *avoids* such damages at the outset. The latter is not prohibited. Neither is the former.

Notwithstanding the majority's implication, "considerations of [public] policy" (*Mosley* v. *Arden Farms Co.*, *supra*, 26 Cal.2d at p. 221 (conc. opn. of Traynor, J.)) argue against a refusal to recognize the insurer's liability to its insured for punitive damages.

Such considerations arise out of the public policies favoring settlement and making a wrongdoer remedy its wrong.

Refusal to recognize the insurer's liability to its insured for punitive damages would lead to untoward consequences. For example, the insurer would be given an incentive tortiously to breach its duty to settle when the claim of its insured's victim is deemed to expose the insured to a relatively small sum in compensatory damages and a relatively large sum in punitive damages. In discharging its duty to settle, the insurer is required to give at least as much weight to its insured's interests as to its own, and to act as though it alone would have to bear any ensuing judgment. It would be invited, however, to act otherwise. It might even compel its insured to go to trial at unreasonably grave risk as for punitive damages—it has not only a *duty* to defend it, but also a *right* to control its defense (see, e.g., *Buss* v. *Superior Court*, *supra*, 16 Cal.4th at p. 63 (dis. opn. of Kennard, J.); see also *id.* at p. 46, fn. 9). For it would know that it alone would *not* have to bear the judgment, and would thereby be tempted to give more weight to its own interests than to its insured's. Why should it not take a gamble, inasmuch as it is a "gamble that only its insured stands to lose" (*Magnum Foods, Inc.* v. *Continental Cas. Co.* (10th Cir. 1994) 36 F.3d 1491, 1504)? The result would be to transform the duty to settle into a thing of paper. The result of *that* would be the unjust enrichment of the insurer and the unjust impoverishment of its insured. The insurer would receive real premiums in consideration for an empty promise, and would also avoid any payment in settlement. Its insured would pay such premiums in exchange for such a promise, and would also be compelled to bear the threat and actuality of loss that a payment in settlement would have precluded.

By contrast, recognition of the insurer's liability to its insured for punitive damages would not lead to untoward consequences. That the insurer would be encouraged to discharge its duty to settle would be all to the good. That its insured would receive a remedy for any tortious breach thereof would not appreciably reduce the force of punitive damages as a punishment for, and deterrent against, oppressive, fraudulent, or malicious conduct on its part. As explained, punishment remains in the form of opportunity and transaction costs. So too deterrence. As also explained, it is inconceivable that the insured would be enticed to engage in such conduct on the speculation that its insurer might perhaps tortiously breach its duty to settle, and then might perhaps be held liable to it for damages therefor.

In conclusion, I would simply allow the law to operate in neutral fashion. The insurer has a duty to settle. It must discharge it in the face of punitive damages as well as compensatory damages. In addition, under section 3523 of the Civil Code, "[f]or every wrong there is"—and must be—"a remedy." That applies to the wrong the insured suffers at the hands of its insurer as well as the wrong the insured's victim suffers at the hands of the insured itself.

### III

For the reasons stated above, I cannot favor *all* insurers over *all* their insureds on the issue of punitive damages. Since the majority do so, I am compelled to dissent.

George, C. J., and Werdegar, J., concurred.