**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YAN FANG DU, individually and as
Assignee of Joon Hak Kim,
        *Plaintiff-Appellant,*

        v.

ALLSTATE INSURANCE COMPANY;
DEERBROOK INSURANCE COMPANY, a
subsidiary of Allstate Insurance
Company,
        *Defendants-Appellees.*

No. 10-56422

D.C. No.
2:08-cv-06301-
GW-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Submitted May 11, 2012*
Pasadena, California

Filed June 11, 2012

Before: Harry Pregerson and Susan P. Graber,
Circuit Judges, and Edward M. Chen, District Judge.**

Opinion by Judge Chen

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Edward M. Chen, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Andrew N. Chang, Esner, Chang & Boyer, Pasadena, California, for the plaintiff-appellant.

John T. Brooks, Luce Forward Hamilton & Scripps LLP, San Diego, California, for the defendants-appellees.

## OPINION

CHEN, District Judge:

### I. *OVERVIEW*

Appellant Yang Fang Du brought this suit against Appellee Allstate Insurance Company and its subsidiary Deerbrook Insurance Company (collectively "Deerbrook") for breach of the implied covenant of good faith and fair dealing. Du was injured in an accident caused by Deerbrook's insured, Joon Hak Kim. After Du received a judgment against Kim in the amount of $4,126,714.46, Kim assigned his bad faith claim to Du.

Du brought the instant suit against Deerbrook, arguing that Deerbrook breached the implied covenant of good faith and fair dealing owed to its insured Kim when Deerbrook did not attempt to reach a settlement of Du's claims after Kim's liability in excess of the policy limit became reasonably clear. Du appeals the district court's rejection of Du's request to instruct the jury that it could consider Deerbrook's failure to effectuate a settlement in determining whether Deerbrook

breached the implied covenant. We conclude that Du's proposed jury instruction is consistent with the law but that there was no evidentiary basis for the instruction. Accordingly, we affirm the district court's judgment.

## II  *FACTUAL AND PROCEDURAL BACKGROUND*

### 1.  *Du's 2006 Personal Injury Lawsuit Against Kim*

On June 17, 2005, Joon Hak Kim was involved in an accident when his car collided with another vehicle. All four occupants of the second vehicle — Appellant Yan Fang Du, Li Jie Wang, Wan Hai Feng, and Shuo Feng — sustained injuries. Kim's insurance policy issued by Appellee Deerbrook had a liability limit of $100,000 for each individual claim, with an aggregate maximum of $300,000 for any one accident.

Over the next several months Deerbrook corresponded with a number of lawyers who in succession represented Du. Deerbrook attempted to obtain medical documentation from Du and a statement from Kim but was not successful. Notwithstanding the lack of cooperation by Du and Kim in providing the documentation requested, Deerbrook eventually evaluated the claim file on February 15, 2006. Deerbrook was aware that there was a claim of serious injury by Du and accepted Kim's liability.

No settlement demands or offers were made until June 9, 2006, when Marc Katzman, Du's lawyer, submitted a $300,000 global demand for all four plaintiffs. For the first time, Du documented her medical costs at $108,742.92. The demand also listed medical costs to Wan Hai Feng at $6,676.00, Shuo Feng at $13,274.00, and Li Jie Wang at $13,809.00.

Anna Harcharik, Deerbrook's adjuster, told Katzman there was insufficient information about Wan Hai Feng, Shuo Feng,

and Li Jie Wang and suggested settling Du's claim separately. Katzman rejected the suggestion and indicated that Deerbrook had to pay the full $300,000 policy limit and settle all claims. In August 2006, Katzman rejected Deerbrook's $100,000 settlement offer to Du as "too little too late."

On October 31, 2006, Du filed a personal injury lawsuit against Kim, and received a jury verdict of $4,126,714.46. Deerbrook paid the $100,000 available under Kim's liability coverage to partially satisfy the judgment. Kim then assigned his bad faith claim to Du in exchange for a covenant not to execute.

## 2.   *Du's Claim Against Deerbrook*

In September 2008, Du, exercising the assignment of Kim's bad faith claim, filed suit against Allstate Insurance Company and Deerbrook, alleging that Deerbrook breached the covenant of good faith and fair dealing owed to Kim. Du alleged that Deerbrook breached the implied covenant when Deerbrook failed to affirmatively settle Du's claim within Kim's policy limits even after Kim's liability for a judgment in excess of the policy limits became clear on February 15, 2006.

At trial, Du proposed the following jury instruction based on the Judicial Council of California Civil Jury Instruction ("CACI") 2337 ("Violation of Insurance Regulation or Industry Practice"):

> In determining whether Deerbrook Insurance Company breached the obligation of good faith and fair dealing owed to Mr. Kim, you may consider whether the defendant did not attempt in good faith to reach a prompt, fair, and equitable settlement of Yan Fang Du's claim after liability [of its insured Kim] had become reasonably clear.

The presence or absence of this factor alone is not enough to determine whether Deerbrook Insurance Company's conduct breached the obligation of good faith and fair dealing. You must consider Deerbrook Insurance Company's conduct as a whole in making this determination.

The district court rejected this proposed jury instruction; it concluded that an insurer has no duty to initiate settlement discussions in the absence of a settlement demand from the third-party claimant. The district court also ruled that there was no factual foundation for the instruction, as "the issue of settlement was broached at a sufficiently early time in the litigation that it vitiates any claim or effective claim insofar as a failure to initiate a settlement discussion."

At trial, the district court gave modified forms of CACI 2334 and 2337. Both of these instructions made clear that breach of the covenant of good faith and fair dealing could be found only if Deerbrook had failed to accept a reasonable settlement demand, not for failing affirmatively to effectuate a settlement.[1]

Likewise, the jury verdict form asked, "1. Did Deerbrook unreasonably or without proper cause, fail to accept a reasonable settlement demand for an amount within policy limits?"

---

[1]The modified CACI 2337 stated in part:

In determining whether Defendant Deerbrook acted unreasonably or without proper cause, you may consider whether the Defendant actions violated an applicable California state insurance regulation or an accepted insurance industry practice . . . . [A]ny such violation/lack of reasonableness on the part of the insurance company would not be relevant to the Plaintiff's claims in this case *unless the violation/lack of reasonableness relates to the Defendant's purported refusal to accept a reasonable settlement demand within policy limits.*

(Emphasis added.)

The jury answered no. The district court then entered judgment in favor of Deerbrook.

This timely appeal followed.

### III.  *STANDARDS OF REVIEW*

"The standard of review for an alleged error in jury instructions depends on the nature of the claimed error." *Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994). "A district court's formulation of the jury instruction is reviewed for abuse of discretion. If, however, the instructions are challenged as a misstatement of the law, they are then reviewed de novo." *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000) (per curiam) (internal quotation marks and citation omitted).

In addition, there must be a sufficient evidentiary foundation to support giving the instruction. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1117-18 (9th Cir. 2008). Whether there is sufficient evidence to support an instruction is reviewed for abuse of discretion. *Galdamez v. Potter*, 415 F.3d 1015, 1021 (9th Cir. 2005); *see also United States v. Hairston*, 64 F.3d 491, 494 (9th Cir. 1995).

Where there is legal error in instructing the jury in a civil case, reversal is required unless the error is more probably than not harmless. *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005); 28 U.S.C. § 2111; Fed. R. Civ. P. 52. An error is harmless if it is more probable than not that the jury would have reached the same verdict had it been properly instructed. *Dang*, 422 F.3d at 811.

### IV.  *DISCUSSION*

Du's appeal raises this central legal issue: Does an insurer have a duty, after liability of the insured has become reasonably clear, to attempt to effectuate a settlement in the absence

of a demand from the claimant? Du contends that the district court erred when it refused her proposed instruction permitting such liability.

Deerbrook counters that, under California law, an insurer does not have a duty proactively to extend a settlement offer of its own and that the duty of good faith is breached only if the insurer fails to accept a reasonable policy limits demand. Deerbrook also argues that California law on the insurer's duty to settle is at best unsettled, and thus Deerbrook should not be held liable under the "genuine dispute" doctrine. Finally, Deerbrook argues that, even if an insurer had a duty proactively to attempt to settle, there was no evidentiary foundation for such an instruction in the instant case and that any error was harmless.

Because the district court's ruling below evidences potential confusion as to the scope of insurers' duty to settle, we take this opportunity to address the issue. We hold that, under California law, an insurer has a duty to effectuate settlement where liability is reasonably clear, even in the absence of a settlement demand. However, in the context of this case, we conclude that the district court did not abuse its discretion in finding there was no evidentiary basis for Du's proposed jury instruction.

**1. The Duty to Settle Under the Implied Covenant of Good Faith and Fair Dealing Includes the Duty to Effectuate Settlement Even in the Absence of a Demand**

**[1]** "In each policy of liability insurance, California law implies a covenant of good faith and fair dealing." *PPG Indus., Inc. v. Transamerica Ins. Co.*, 975 P.2d 652, 654 (Cal. 1999). This implied covenant covers the duty to settle within policy limits "when there is substantial likelihood of recovery in excess of those limits." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 9 (Cal. 2000) (internal quotation

marks omitted). Where there is a substantial risk of an insured's exposure in excess of the policy limits, the interests of the insurer and the insured diverge. In that circumstance, the insurer could choose not to settle and instead go to trial knowing that it would be liable only for the policy limits, exposing the insured to the risk of paying the excess judgment. To ameliorate this conflict of interests, the covenant of good faith and fair dealing "requires the carrier to consider in good faith the interests of the assured equally with its own and evaluate settlement offers within policy limits as though it alone carried the entire risk of loss." *Merritt v. Reserve Ins. Co.*, 110 Cal. Rptr. 511, 520 (Ct. App. 1973); *see Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 123 Cal. Rptr. 288, 292-93 (1975) (accord).

**[2]** California courts have commonly applied the duty to settle to situations in which the insurer unreasonably rejects a settlement offer within policy limits. *E.g.*, *Kransco*, 2 P.3d 1; *Crisci v. Sec. Ins. Co. of New Haven, Conn.*, 426 P.2d 173, 176 (Cal. 1967). *See PPG Indus., Inc.*, 975 P.2d at 655. At issue in this case is whether the duty more broadly requires an insurer to effectuate settlement when liability is reasonably clear, even in the absence of a settlement demand. For several reasons, we conclude that it does.

**[3]** First, the conflict of interest that animates the duty to settle exists whenever there is a significant risk of a judgment in excess of policy limits and there is a reasonable opportunity to settle within those limits; this conflict obtains regardless whether a settlement demand is made by the injured party. If, as the general duty of good faith requires, the insurer "conduct[ed] itself as though it alone were liable for the entire amount of the judgment," a rational party should attempt to settle if there is a "substantial likelihood of recovery in excess of those limits," *Kransco*, 2 P.3d at 9, and there is a reasonable opportunity to settle within policy limits.

**[4]** Second, although the California courts have not squarely addressed the question, this court has interpreted

California law to impose such a duty. In *Gibbs v. State Farm Mutual Insurance Co.*, the insurer had failed to conduct any negotiations with the injured party even after the injured party repeatedly told the insured that he only wanted the limits of the insurance policy. 544 F.2d 423, 427 (9th Cir. 1976). Although no formal, written offer existed, this court held that the injured party's informal statements gave the insurer "a reasonable opportunity to settle the claim within the policy limits." *Id.* When the insurer failed to take any actions, it "neglect[ed] its good faith duty to take affirmative action in settling the claim." *Id.*

Third, the California courts have not ruled to the contrary. Deerbrook's reliance on *Merritt*, 110 Cal. Rptr. 511, and *Coe v. State Farm Mutual Automobile Insurance Co.*, 136 Cal. Rptr. 331 (Ct. App. 1977) is misplaced.

In *Merritt*, the plaintiff claimed that the insurer breached the implied covenant of good faith and fair dealing owed to its insured when the insurer "failed to properly undertake, initiate, entertain or pursue discussions with plaintiff . . . for the disposition and settlement of said case at any stage of the proceeding prior to judgment." 110 Cal. Rptr. at 513-14. The plaintiff argued that the insurer could be held liable for failure to initiate settlement overtures even in the absence of a demand by the claimant. *Id.* at 524-25. The court rejected this argument because "[t]his theory is supported by no evidence whatsoever." *Id.* at 525. Because the workers' compensation carrier's lien greatly exceeded the insured's policy limit of $100,000, "[n]o suggestion that settlement was feasible was ever made prior to judgment by anyone connected with the suit." *Id.* The court's refusal to find bad faith therefore rested not on a categorical rule that there is no legal duty to initiate settlement, but on the facts of that case: any settlement overtures would have been futile. *See Boicourt v. Amex Assurance Co.*, 93 Cal. Rptr. 2d 763 (Ct. App. 2000) (holding that *Merritt* did not reject the plaintiff's claim "on the legal ground that an insurer need never 'initiate settlement overtures,' but

on the particular facts of the case before the court: There was no evidence *at all* to support the conjecture that 'overtures' might have been fruitful."); *Gibbs,* 544 F.2d at 427 (holding that the insurer's reliance on *Merritt* was "misplaced, for in that case no reasonable settlement opportunity existed").[2]

In *Coe*, the court held that the trial court erred when it gave an instruction which stated, "The unwarranted failure or refusal of the insurance company to so settle constitutes a breach of the implied warranty of good faith and fair dealing." 136 Cal. Rptr. at 339. The court stated that "actionable 'bad faith' arises, not from an insurance carrier's obligation 'to settle,' but from unwarranted *failure to accept a reasonable settlement offer.*" *Id.* However, the central theory of the case concerned the insurer's refusal to accept a deficient demand, not a failure to initiate settlement discussions. *See id.* at 337-38. There was no claim at trial that the insurer acted in bad faith by failing to initiate further discussions. *Coe*'s broad language was therefore *dicta* and not consistent with the more recent decision in *Boicourt*, 93 Cal. Rptr. 2d 768-69 (holding that an insurer can violate good faith duty without a settlement demand by the claimant, such as where insurer has a policy of never disclosing policy limits to injured parties).

**[5]** Fourth, the breadth of an insurer's duty to settle is substantiated by California Insurance Code section 790.03(h) which enumerates the obligations an insurer owes to its insured. Conduct that violates this section can be the basis for

---

[2]Deerbrook's citation to the court's statement in *Merritt* that a conflict of interest "only develops when an offer to settle an excess claim is made within policy limits," 110 Cal. Rptr. at 523-24, is misplaced. That passage must be taken in the context of the court's exposition of the general policy considerations that underpin the good faith doctrine. It was not intended as a categorical rule excluding other aspects of the duty to settle. Indeed, in *Boicourt*, the court found that there was no reason for *Merritt* to find that a conflict of interest could develop "only" when an offer to settle is made, and that "*Merritt's* use of the word 'only' must be deemed to be mere dicta." 93 Cal. Rptr. 2d at 767.

a bad faith claim: Section 790.03(h)(5) specifically identifies as an "unfair claims settlement practice[ ]," "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

In *Pray ex rel. Pray v. Foremost Insurance Co.*, this Court found that "[i]t is reasonably clear that California courts will interpret the California statute as imposing upon an insurance company the duty actively to investigate and attempt to settle a claim *by making*, and by accepting, reasonable settlement offers once liability has become reasonably clear." 767 F.2d 1329, 1330 (9th Cir. 1985) (per curiam) (emphasis added). Although *Pray* was predicated on the assumption that section 790.03(h) was enforceable through a private right of action, *id.*, an assumption no longer valid under *Moradi-Shalal v. Fireman's Fund Insurance Cos.*, 250 Cal. Rptr. 116 (1988), subsequent courts have found that violations of section 790.03(h) can serve as evidence that an insurer had breached the implied covenant of good faith and fair dealing, *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 93 Cal. Rptr. 2d 364, 412 (Ct. App. 2000); *Jordan v. Allstate Ins. Co.*, 56 Cal. Rptr. 2d 312, 323 (Ct. App. 2007).

Indeed, following *Jordan*, the Judicial Council of California Civil Jury Instructions added CACI 2337 (2008), which tracks section 790.03(h). In relevant part, CACI 2337 states: "In determining whether [*name of defendant*] acted unreasonably or without proper cause, you may consider whether the defendant did any of the following: . . . (e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of [*name of plaintiff*]'s claim after liability had become reasonably clear." That instruction does not require that a bad faith claim be predicated on the insurer's rejection of a claimant's demand.

**[6]** Thus, an insurer can violate the duty of good faith and fair dealing by failing to attempt to effectuate a settlement

within policy limits after liability has become reasonably clear. Du's proposed instruction was a fair statement of the law. The district court's rejection of that instruction on the ground that no such duty could exist in the absence of a settlement demand was in error.

## 2.  The "Genuine Dispute" Doctrine Does Not Apply to Third-Party Claims

[7] Deerbrook argues that the "genuine dispute" rule insulates it from bad faith liability because Deerbrook's obligations as to whether it should settle were "unsettled." However, the "genuine dispute" doctrine traditionally applies in the context of disputed coverage in first-party insurance cases, where the court must determine whether the insurer's refusal to pay policy benefits was unreasonable or without cause. *See Morris v. Paul Revere Life Ins. Co.*, 135 Cal. Rptr. 2d 718, 723 (Ct. App. 2003). In first party cases, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 108 Cal. Rptr. 2d 776, 784 (Ct. App. 2001); *see also Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 440 (Ct. App. 1994); *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

[8] Settlement in third-party insurance cases is different. The California Supreme Court has held that

> the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy *does not provide*

*coverage*, should not affect a decision as to whether the settlement offer in question is a reasonable one.

*Johansen*, 123 Cal. Rptr. 288, 292-93 (emphasis added). This court has recognized that, under California law, "a good faith belief in noncoverage does not insulate an insurer from liability for failure to settle a claim." *Gibbs*, 544 F.2d at 427; *see Howard v. Am. Nat'l Fire Ins. Co.*, 115 Cal. Rptr. 3d 42, 70 (Ct. App. 2010) (noting that while insurers in first-party cases may raise a reasonable dispute over coverage without being guilty of bad faith, "it has never been held that an insurer in a third party case may rely on a genuine dispute over coverage to refuse settlement").[3]

**[9]** The district court's rejection of Du's proposed instruction cannot be sustained on the basis of the "genuine dispute" doctrine.

### 3. The District Court Did Not Abuse Its Discretion in Ruling That There Was No Foundation for Du's Proposed Jury Instruction

**[10]** As noted above, "a party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." *Mendez*, 540 F.3d at 1117-18 (internal quotation marks omitted). In the instant case, the district court rested its decision to reject Du's proposed jury instruction in part on its observation that, "in fact, the issue of settlement was broached at a sufficiently early time in the litigation that it vitiates any claim or effective claim insofar as a failure to initiate a settlement discussion."

---

[3]There is good reason to distinguish first-party claims from third-party claims in this context. The insurer's good faith duty to settle with a third party can be accomplished without prejudicing its right to later assert non-coverage against the insured. If it defended under a reservation of rights, following settlement of the third-party claim, the insurer can seek a declaration of non-coverage and recover reimbursement of its expenditures from the insured. *See Johansen*, 538 P.2d 744, 750.

**[11]** There is no dispute that in June and July 2006, Deerbrook engaged with Du in settlement negotiations; it made a $100,000 policy limits offer to Du, which Du rejected. The bad faith claim asserted here is that the case would have been settled within policy limits had Deerbrook initiated earlier settlement negotiations. Deerbrook contends that if there was a duty to initiate settlement talks, it did so in a timely fashion in view of the circumstances. The record supports Deerbrook's contention.

First, Deerbrook could not make an earlier offer because Deerbrook lacked corroborating proof of the extent of Du's injuries and medical expenses. Prior to June 23, 2006, the only information Deerbrook had regarding Du's injuries and medical bills were the uncorroborated and conflicting assertions by Du and her counsel. Du's expert conceded that Deerbrook could not base a settlement offer solely on the representations of claimant and claimant's lawyer.

Du's expert also conceded that it was reasonable for Deerbrook to rely on Katzman's promise to provide Harcharik with the medical information, a promise that remained unfulfilled until June 2006. Du's expert further admitted that Deerbrook could not have obtained Du's medical records without getting them from Du's lawyers. The record shows that Deerbrook made repeated efforts to obtain the information.

Second, prior to June 2006, Deerbrook had no proof of the injuries of the other three individuals injured in the accident. Paying Du $100,000 could have left Kim underprotected if the remaining three claims exceeded $200,000, especially as prior counsel had asserted that the Fengs suffered "life threatening" injuries.

**[12]** In sum, there was no evidence that Deerbrook should or could have made an earlier settlement offer to Du. Accordingly, the district judge did not abuse his discretion in finding there was no evidentiary basis for Du's proposed instruction.

## V.  *CONCLUSION*

Although the district court legally erred in holding as a matter of law that an insurer's duty of good faith and fair dealing cannot be premised on the insurer's failure to effectuate settlement in the absence of a reasonable demand, the district court did not abuse its discretion in refusing Du's instruction because there was no evidentiary foundation for it. Accordingly, we affirm the judgment.

**AFFIRMED**.