120 Cal.Rptr.2d 336 (2002)
99 Cal.App.4th 488
O'CONNOR AGENCY, INC., Plaintiff and Appellant,
v.
Alan L. BRODKIN et al., Defendants and Respondents.
No. G026504.
Court of Appeal, Fourth District, Division Three.
May 31, 2002.
Review Granted August 14, 2002.
*337 Esner & Chang and Stuart B. Esner, Los Angeles, for Plaintiff and Appellant.
Sims & Sprowl, Wayne R. Sims, Costa Mesa, and Selim Mounedji for Defendants and Respondents.

OPINION
MOORE, J.
O'Connor Agency, Inc. (O'Connor) sued attorney Alan Brodkin for negligently failing to recover punitive damages in a lawsuit he brought on O'Connor's behalf. The trial court found O'Connor's action was time barred and granted summary judgment in Brodkin's favor. We conclude the statute of limitations issue was wrongly decided and that recovery of lost punitive damages is available in a legal malpractice action, and therefore reverse.

I

FACTS
O'Connor is an advertising agency specializing in ads for the national yellow pages. In 1989, it hired Brodkin to pursue an action against some of its former employees for misappropriation of clients and unfair competition. Following a court trial in 1993, the judge awarded O'Connor $160,467 in compensatory damages and $500,000 in punitive damages.
Defendants appealed, arguing several grounds for reversing the award of compensatory damages, including the sufficiency of the evidence and several of the trial court's evidentiary rulings. They also argued the award of punitive damages was improper because O'Connor failed to present evidence of defendants' financial worth. We agreed and reversed the portion of the judgment awarding punitive damages. We also reduced the amount of the compensatory award. (O'Connor Agency, Inc. v. Anchor Publications, Inc. (July 23, 1997, G015472) [nonpub. opn.] pp. 14-18.)
On July 17, 1998, O'Connor sued Brodkin for negligently failing to prove its claim for punitive damages. Brodkin moved for summary judgment on the basis O'Connor's suit was filed beyond the statute of limitations applicable to legal malpractice actions. (See Code Civ. Proc, § 340.6.) In opposing the motion, O'Connor argued the statute of limitations was tolled throughout the appeal because: (1) it did not sustain actual injury until the appeal was decided; and (2) Brodkin continued to act as its attorney during this time. (Ibid.) The court rejected O'Connor's arguments and granted summary judgment against it. The court also denied O'Connor's *338 motion for reconsideration, and this appeal followed.
While this appeal was pending, Division One of this court decided Piscitelli v. Friedenberg (2001) 87 Cal.App.4th 953, 105 Cal.Rptr.2d 88 (hereafter Piscitelli). Piscitelli held that in a legal malpractice action based on negligence, the plaintiff could not recover lost punitive damages. The parties submitted supplemental briefs addressing Piscitelli.

II

DISCUSSION

Standard of Review
This court reviews de novo the trial court's decision to grant summary judgment. (Hersant v. Department of Social Services (1997) 57 Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483.) We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. (Ibid.) All doubts as to whether any material issues of fact exist are resolved in favor of the party opposing summary judgment. (Podolsky v. First Healthcare Corp. (1996) 50 Cal.App.4th 632, 642, 58 Cal.Rptr.2d 89.)

Statute of Limitations
Code of Civil Procedure section 340.6, subdivision (a), states in part: "An action against an attorney for a wrongful act or omission ... arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission ...." The one-year statute of limitations is tolled, however, if "the plaintiff has not sustained actual injury" and while "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred...." (Code Civ. Proc, § 340.6, subd. (a)(1), (2).)
When does a client who won its case at the trial court but lost on appeal suffer "actual injury" for purposes of the statute of limitations? The trial court ruled that O'Connor suffered actual injury when "it retained separate counsel and became obligated ... to defend itself in the appeal." O'Connor argues it did not suffer actual injury until this court reversed the judgment in the underlying action.
The key California Supreme Court cases addressing this issue arose in quite different factual settings. In Laird v. Blacker (1992) 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691 (hereafter Laird), a client who lost below argued she had not suffered actual injury until her appeal was rejected, and the court disagreed. It held the statute began to run when the case was dismissed in the lower court and judgment was entered against her.
In Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 76 Cal.Rptr.2d 749, 958 P.2d 1062 (hereafter Jordache), the client sued its attorney for failing to timely tender defense to its malpractice carrier. The client argued it did not suffer actual injury until it settled subsequent bad faith litigation against the carrier, and the court rejected this argument. The court held the statute began to run after it learned of its counsel's neglect and hired new attorneys to prosecute actions against its insurance carriers. (Id. at p. 752, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
The court also noted: "(1) determining actual injury is predominantly a factual inquiry; (2) actual injury may occur without any prior adjudication, judgment, or settlement; (3) nominal damages, speculative harm, and the mere threat of future *339 harm are not actual injury; and (4) the relevant consideration is the fact of damage, not the amount." (Jordache, supra, 18 Cal.4th at p. 743, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
The crux of Brodkin's argument is that O'Connor sustained injury when it was forced to spend money to defend itself in the appeal of the underlying case. Yet incurring attorney fees on appeal is not the kind of "injury" contemplated by Code of Civil Procedure section 340.6, subdivision (a)(1). Defending a victory is a common occurrence in litigation, experienced by many litigants prevailing at the trial court. The fact that an appeal is filed in and of itself implies nothing about its merits, nor the trial attorney's performance. Even if Brodkin had presented evidence regarding the underlying defendants' financial worth, there is no reason to believe the appeal would not have proceeded on the other issues defendants raised. "Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (Jordache, supra, 18 Cal.4th at p. 743, 76 Cal. Rptr.2d 749, 958 P.2d 1062.) The fact that an appeal was filed, but not ruled upon, does not constitute "injury legally cognizable as damages." Until this court ruled in the underlying defendant's favor, O'Connor was not injured, but victorious.
Brodkin asks us to adopt a rule that would require a successful litigant in the trial court to file a malpractice action against its attorney if the opposing party appeals, citing any reason that might implicate attorney malpractice, before the appeal is decided. Such a rule would defy common sense and result in the filing of myriad malpractice cases. Any "winning" plaintiff served with a notice of appeal that might possibly implicate attorney malpractice would be required to retain malpractice counsel and file a new lawsuit based solely on the defendant's contentions on appeal. This is plainly absurd. Why wait for the appeal? Instead, the plaintiff could simply enclose a complaint for malpractice along with the thank-you flowers being sent to his or her "victorious" attorney.
We do not, however, adopt a bright-line rule stating that actual injury never occurs to a prevailing plaintiff until an appellate court reverses the judgment. As the court noted in Jordache, when actual injury occurs is a question of fact that will depend on the specifics of each case. (Jordache, supra, 18 Cal.4th at p. 743, 76 Cal.Rptr.2d 749, 958 P.2d 1062.) In this case, because defending the appeal would have been required even absent the alleged malpractice, no actual injury was suffered until this court reversed the lower court's judgment in O'Connor's favor.
The case was filed within one year of that date and was therefore not barred by the statute of limitations, and summary judgment was improper on this ground. Because of this conclusion, we need not analyze O'Connor's argument regarding continuing representation.

Recovery of Lost Punitive Damages
Although a recent decision from this district has reached the contrary conclusion, we hold with longstanding legal authority that lost punitive damages can be recovered by a plaintiff in a legal malpractice action. This decision is consistent with the relevant statutes regarding the measure of damages due an injured plaintiff, and we believe that any exception to these statutes should be established by the legislature, not the courts.
The first published decision in California to consider whether lost punitive damages are recoverable in a legal malpractice action was Merenda v. Superior Court (1992) *340 3 Cal.App.4th 1, 4 Cal.Rptr.2d 87 (hereafter Merenda). In that case, the Third Appellate District relied on the general rule that a plaintiff is entitled to be "made whole" when his attorney's negligence causes a loss. The court therefore decided the plaintiffs recovery may include any punitive damages he would have obtained in the underlying action. (Id. at p. 12, 4 Cal.Rptr.2d 87.) Although the court recognized that several cases had prohibited an award of punitive damages against persons other than the original wrongdoer, it found those cases "distinguishable because in none of them did the defendants from whom punitive damages were sought do anything proximately to cause the plaintiff to lose a claim for punitive damages against a third party wrongdoer." (Id. at pp. 14-15, 4 Cal.Rptr.2d 87.)
Piscitelli supra, 87 Cal.App.4th 953, 105 Cal.Rptr.2d 88, took issue with Merenda and reached the opposite conclusion. In reaching the conclusion that a legal malpractice plaintiff could not recover lost punitive damages, the court's reasoning was based on two key points: first, in a legal malpractice claim, punitive damages from the underlying claim are not a loss which must be compensated to make the plaintiff whole, and second, any loss of punitive damages that would have been awarded in the underlying case was not "proximately caused" by the malpractice because public policy considerations dictate that punitive damages should only be awarded against the actual wrongdoer. (Id. at pp. 979-981, 105 Cal.Rptr.2d 88.)
The first issue is whether punitive damages to which the plaintiff would have been entitled in the underlying claim are properly defined as compensatory, or, as Piscitelli states, are merely punitive damages "relabeled as compensatory." (Piscitelli, supra, 87 Cal.App.4th at p. 981, 105 Cal. Rptr.2d 88.) The Merenda court analyzed this issue based on the applicable statutes, Civil Code sections 3281, 3282, and 3333. (Merenda, supra, 3 Cal.App.4th at p. 11-12, 4 Cal.Rptr.2d 87.)
"Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." (Civ.Code, § 3281.) "[T]he measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ.Code, § 3333.) "Detriment is a loss or harm suffered in person or property." (Civ.Code, § 3282.)
If, but for the attorney's negligence, the client would have received an award of punitive damages, the attorney's negligence actually caused the client to suffer a loss as defined by the code. The malpracticing attorney is hardly the innocent "actor" as characterized by Piscitelli. (Piscitelli, supra, 87 Cal.App.4th at p. 980, 105 Cal.Rptr.2d 88) Although punitive damages are not compensatory in the underlying case, they are compensatory in the context of a legal malpractice casethey are part of the recovery the client would have received, were it not for the attorney's negligence. Characterizing lost punitive damages as a "windfall" (id. at p. 981, 105 Cal.Rptr.2d 88) is simply inaccurate; lost punitive damages are properly considered compensatory in the legal malpractice setting. Piscitelli is ultimately unpersuasive because it ignores the important difference between a legal claim and punitive damages. O'Connor is not seeking punitive damages against Brodkin, but the lost value of its legal claim. Merenda clearly makes this point (Merenda, supra, 3 Cal.App.4th at p. 14, 4 Cal.Rptr.2d 87) and Piscitelli does not refute it, but merely overrides it with the deus ex machina of *341 "public policy." Piscitelli says that it simply does not matter that the malpracticing lawyer lost the value of plaintiffs claim; it would simply be unjust to hold him responsibleend of discussion. (Piscitelli, supra, 87 Cal.App.4th at pp. 982-983, 105 Cal.Rptr.2d 88.)
Under Piscitelli's reasoning, a plaintiff claiming punitive damages is akin to a wandering beachcomber who accidentally kicks a can filled with diamonds. Not so. Making a claim for punitive damages is not a task to be taken lightly. Cumbersome pleading and discovery requirements defy early resolutions and quick settlements when punitive damages are claimed. In the modern litigation arena, a plaintiff must be financially and psychologically prepared to face the almost inevitable army of unhappy navy blue suits who spend days asking questions before court reporters who charge by the page. It is an expensive process with the potential for major financial losses. The plaintiff who wrongly accuses must expect a large bill for costs. While a plaintiff is not entitled to punitive damages in the same sense as compensatory damages, to say that a plaintiff has no stake in the outcome of a punitive damages claim would be naive.
And what incentive does a plaintiff have to embark upon this daunting venture? The answer is quite simple: Civil Code section 3294, subdivision (a). "[W]here it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Ibid.) The patchwork of longstanding damages legislation (Civ.Code, §§ 3281, 3282, 3333 and 3294) contains our lawmakers' combined efforts toward deterring oppression, fraud and malice in California. As stated by the United States Supreme Court, "[T]he economic penalties ... whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy." (BMW of North America, Inc. v. Ira Gore (1996) 517 U.S. 559, 572, 116 S.Ct. 1589, 134 L.Ed.2d 809.) Punitive damages imposed on a corporation for its agent's conduct "therefore rationally advances the State's goal." (Pacific Mutual Life Insurance Company v. Haslip (1991) 499 U.S. 1, 14, 111 S.Ct. 1032, 113 L.Ed.2d 1.)
We disagree with the Piscitelli court's conclusion that public policy prohibits an award of lost punitive damages in a legal malpractice case. Although the court is correct that punitive damages are meant to punish and deter, that simply does not hold true once the underlying case becomes a legal malpractice claim. Nor do the authorities cited in Piscitelli compel such a result. They merely stand for the general proposition that punitive damages are meant to punish and deter wrongdoers. (Piscitelli, supra, 87 Cal.App.4th at p. 980, 105 Cal.Rptr.2d 88.) We agree, but this principle has no application here. The damages in question are not meant to punish and deter the malpracticing attorney, but to compensate for loss from the underlying case. They are merely an element of the compensatory award necessary to make the plaintiff whole.
The dissent argues that under a traditional proximate cause analysis, public policy considerations weigh against allowing recovery of lost punitive damages. In support of this argument, the dissent cites PPG Industries, Inc. v. Transamerica Ins. Co. (1999) 20 Cal.4th 310, 84 Cal.Rptr.2d 455, 975 P.2d 652. The context of the decision in PPG Industries, however, is very different from the setting we find here. In PPG Industries, the question *342 was whether an insured, PPG Industries, could hold the defendant insurance company liable for bad faith for its failure to settle the underlying lawsuit, leading to the award of punitive damages against PPG. (Id. at pp. 312-313, 84 Cal.Rptr.2d 455, 975 P.2d 652.) In weighing whether the actual wrongdoer (PPG) or its insurance company should pay those damages, the policy considerations identified by the dissent are certainly logical and relevant, but the same logic does not follow here. In PPG Industries, the ultimate issue was whether the actual wrongdoer or its insurance company should pay an award of punitive damages. Here, the actual wrongdoer cannot be held liable for punitive damages, because of an attorney's negligence. The situations are therefore very different, and the same public policy arguments available when the actual wrongdoer can be held liable, as in PPG Industries, do not apply here.
Moreover, only two other published cases agree with Piscitelli. The first is Cappetta v. Lippman (S.D.N.Y.1996) 913 F.Supp. 302, 306. This federal trial court decision, purporting to apply New York state law, holds in a one-paragraph analysis that since the underlying defendant would not be punished by awarding the plaintiff the punitive damages lost in the underlying action, punitive damages are not available. Cappetta completely ignores the issue of fully compensating the plaintiff for the attorney's malpractice by awarding the plaintiff the full value of the lost claim. The other published case agreeing with Piscitelli is Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP (2002), S014444, 95 Cal.App.4th 154, 115 Cal.Rptr.2d 342, review granted May 1, 2002 (hereafter Ferguson). Ferguson simply cites Piscitelli and adopts its holding without analysis.
Piscitelli, Ferguson and Cappetta v. Lippman clearly represent the minority view on this issue. The majority of authorities from other jurisdictions agree with the rule set forth in Merenda. "If an attorney's negligence is the cause of dismissal of the underlying claim, the proper measure of damages is all the compensatory and punitive damages awarded by the jury in the trial of the case within a case." (Elliott v. Videan (App.1989) 164 Ariz. 113, 791 P.2d 639, 645-646; see also Scognamillo v. Olsen (Colo.App.1990) 795 P.2d 1357,1361; Hunt v. Dresie (1987) 241 Kan. 647, 740 P.2d 1046; Haberer v. Rice (S.D. 1994) 511 N.W.2d 279, 286; Jacobsen v. Oliver (D.D.C. Apr. 29, 2002) No. 01-1810(ESH) 201 F.Supp.2d 93 [2002 WL 826913, 2002 U.S. Dist. LEXIS 7938].) In fact, an extensive review of authorities from other states reveals that only New York has concluded otherwise. (See Cappetta v. Lippman, supra, 913 F.Supp. 302; Summerville v. Lipsig (2000) 270 A.D.2d 213, 704 N.Y.S.2d 598 [adopting the Cappetta court's reasoning in a one-page decision].)
The leading treatise on attorney malpractice agrees that Merenda represents the majority rule: "Attorneys can be liable for exemplary or punitive damages lost or imposed because of their negligence." (3 Mallen & Smith, Legal Malpractice (5th ed. 2000) Damages, § 20.7, p. 136, fn. omitted.) The New York cases and Piscitelli are noted as deviations from the rule accepted in other jurisdictions. (Id. at pp. 137-138; id. (2001 supp.) at p. 6.)
If a different conclusion is appropriate based on public policy considerations, it should be the legislature, not the courts, which reaches this decision. While the dissent argues that undesirable societal effects and practical difficulties in the trial court will result from our decision, we cannot disregard a statute for those reasons. *343 In the absence of a legislative exception to the general statutory rules regarding the proper measure of damages, we decline to follow a judicially created departure from those rules. In a legal malpractice case, "all the detriment proximately caused thereby" (Civ.Code, § 3333) includes punitive damages that would have been awarded in the underlying case absent the attorney's negligence.

III

DISPOSITION
The judgment is reversed. Appellant shall recover its costs on appeal.
I CONCUR: SILLS, P.J.
BEDSWORTH, J., I respectfully dissent.
There are difficult decisions to be made here, which my colleagues think should be based upon Merenda v. Superior Court (1992) 3 Cal.App.4th 1, 4 Cal.Rptr.2d 87. I think PPG Industries, Inc. v. Transamerica Ins. Co. (1999) 20 Cal.4th 310, 84 Cal.Rptr.2d 455, 975 P.2d 652 provides the correct analytical framework and also expresses clearly some of the policy issues our decision should take into account. Applying those considerations, I have concluded Piscitelli v. Friedenberg (2001) 87 Cal.App.4th 953, 105 Cal.Rptr.2d 88 provides better guidance than Merenda.
Tort liability requires two causation analyses: whether the act in question was a cause in fact of the injury suffered and whether it was a proximate cause of the injury. My colleagues have correctly discerned that legal malpractice was a cause in fact of the "loss" of punitive damages in this case. But to my mind, they have failed adequately to examine the proximate cause issue. I believe such an analysis leads to the conclusion a legal malpractice action cannot be premised on the "loss" of punitive damages.[1]
In the words of Dean Prosser, "The term `proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established." (Prosser & Keeton, Torts (5th ed.1984) § 42, p. 273.) As far as I can determine, scant attention has been paid to such "undefined considerations" with regard to actions such as this one. Indeed, I can find only two cases in Californiaand only a handful elsewherewhich have addressed the issue at all, and few have discussed it in proximate cause terms.
My colleagues consider it significant that "only two other published cases agree with Piscitelli." (Maj. opn., ante, at p. 342.) But I think this reflects not a weakness in rationale but a paucity of occasions to confront the issue. After all, there are only a half-dozen cases which support the majority's opinion. So far the tally is California, New York and federal district court in New York for Piscitelli and California, Arizona, Kansas, Colorado, South Dakota and federal district court in Washington, D.C. against it. Even if the law were an election, these returns would provide little basis for predicting which way it would go.
*344 The first published decision in California to consider whether lost punitive damages are recoverable in a legal malpractice action was Merenda v. Superior Court supra, 3 Cal.App.4th 1, 4 Cal.Rptr.2d 87. In that case, the Third Appellate District relied on the general rule that a plaintiff is entitled to be "made whole" when his attorney's negligence causes a loss, and decided the plaintiffs recovery could include any punitive damages he would have obtained in the underlying action. (Id. at p. 12, 4 Cal.Rptr.2d 87.) The court recognized that several cases had prohibited an award of punitive damages against persons other than the original wrongdoer. (Id. at p. 14, 4 Cal.Rptr.2d 87.) However, it found those cases "distinguishable because in none of them did the defendants from whom punitive damages were sought do anything proximately to cause the plaintiff to lose a claim for punitive damages against a third party wrongdoer." (Id. at p. 15, 4 Cal.Rptr.2d 87.)
This sounds encouraging, but in fact, the court never discussed any of the policy considerations the phrase "proximately to cause" would seem to promise. While the logic of Merenda is impregnable with regard to causation-in-fact, it does not address any of the considerations which were to concern the court a decade later in Piscitelli v. Friedenberg, supra, 87 Cal. App.4th 953, 105 Cal.Rptr.2d 88.
Piscitelli did engage in a proximate causation determination. It declined to extend legal malpractice liability to "lost" punitive damages, explaining, "It is incorrect to characterize a punitive damage claim as a `loss' for which a legal malpractice plaintiff may be compensated in order to make him or her `whole.' Civil Code section 3294 allows recovery of punitive damages `in addition to the actual damages.' [Citation.] In the underlying action, an award of punitive damages has nothing to [do] with the detriment ... suffered by a legal malpractice plaintiff. That is because, as indicated, punitive damages are not compensation for injury. They are `private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' [Citation.] `Whatever his or her injury, a plaintiff will be made whole by the award of compensatory damages. An award of punitive damages, though perhaps justified for societal reasons of deterrence, is a boon for the plaintiff. "Such damages constitute a windfall...." [Citations.]' [Citations.] Where the stated goal is to make an injured plaintiff `whole,' a windfall award should not be included in the damage equation." (Piscitelli v. Friedenberg, supra, 87 Cal.App.4th at p. 981, 105 Cal. Rptr.2d 88.)
The Piscitelli court was also troubled by the notion of awarding punitive damages against someone other than the original wrongdoer: "We cannot, as a matter of policy, justify imposing an award intended to punish a wrongful actorrelabeled as compensatoryupon a defendant who did not act oppressively, maliciously, or fraudulently. Such a result simply punishes an innocent actor for another's oppressive, malicious, or fraudulent wrongdoing. A punitive damage award is uniquely justified by and proportioned to the actor's particular reprehensible conduct as well as that person or entity's net worth; in order to adequately make the award `sting,' the jury is required to take such matters into consideration. [Citations.] It is inconsistent with the goal of punishment to transfer the punishment to an actor innocent of the conduct necessary to justify an award of punitive damages. Courts have prohibited such a result in other contexts." (Piscitelli v. Friedenberg, supra, 87 Cal. App.4th at pp. 981-982, 105 Cal.Rptr.2d 88, citing Evans v. Gibson (1934) 220 Cal. 476, 489-90, 31 P.2d 389 [neither executor *345 nor estate liable for decedent tortfeasor's punitive damages] and City Products Corp. v. Globe Indemnity Co. (1979) 88 Cal. App.3d 31, 42, 151 Cal.Rptr. 494 [insurer not liable for punitive damages assessed against insured]; see also Civ.Code, § 3294, subd. (b) [employer is generally not liable for employee's acts resulting in punitive damages].)
Lastly, the Piscitelli court addressed Merenda's argument that allowing plaintiffs to recover lost punitive damages was justifiable on the ground the attorney caused the plaintiff to lose his claim for such damages. The court stated, "Such an argument is based on the premise that the attorney's negligence was the legal or `proximate' cause of the jury's failure to award the plaintiff punitive damages. We disagree with this causation analysis. `[P]roximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of [public] policy that limit an actor's responsibility for the consequences of his conduct."' [Citation.] Rules of legal cause operate to relieve the defendant whose conduct is a cause in fact of the injury where it would be considered unjust to hold him legally responsible. [Citation.] Such considerations are present here. While [counsel's] negligence may be the cause in fact of [plaintiffs] lost claims, we decline to extend the doctrine of legal causation to hold his negligence proximately caused the loss of punitive damages that might have been recovered from a third party." (Piscitelli v. Friedenberg, supra, 87 Cal.App.4th at pp. 982-983,105 Cal.Rptr.2d 88.)
I find Piscitelli's reasoning persuasive. Causation in fact is a very seductive concept. "But ... for," is a construction which fairly sings to a mind schooled in the law. But it sings a siren song. As Holmes said, the life of the law has not been logic, but experience. And experience has taught us that causation in fact overlooks policy considerations which are critical to a just determination of liability and damages. So, ever since Palsgraf v. Long Island R. Co. (1928) 248 N.Y. 339, 162 N.E. 99[2] courts have struggled to formulate limitations on liability in the form of proximate cause analysis.[3]
In the area of malpractice litigation, we need look no further for guidance than our own Supreme Court's decision in PPG Industries, Inc. v. Transamerica Ins. Co., supra, 20 Cal.4th 310, 84 Cal.Rptr.2d 455, 975 P.2d 652. There, Transamerica's insured was sued for compensatory and punitive damages. Transamerica accepted the defense but failed to make reasonable efforts to settle. The insured was held liable for compensatory and punitive damages. Transamerica paid the compensatory damages but denied any liability for the punitives. The insured sued Transamerica for bad faith in failing to settle the case, claiming the insurer's conduct caused the imposition of punitive damages.
The Supreme Court held the insurer's conduct in failing to settle was a cause in fact, but not a proximate cause, of the punitive damages. (PPG Industries, Inc. v. Transamerica Ins. Co., supra, 20 Cal.4th at p. 315, 84 Cal.Rptr.2d 455, 975 P.2d 652.) The insurer's failure to settle exposed the insured to punitive damages and therefore was a cause in fact. But the court explained that three public policy considerations militated against holding the insurer liable for punitive damages *346 against the insured. The insured's failure to settle was held not to be a proximate cause of the punitive damages.
Acknowledging that Transamerica's alleged negligence in failing to settle the lawsuit was a cause in fact of PPG's exposure to liability for punitive damages, the court went on to emphasize that, "To simply say ... that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable.... [T]he law must impose limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy." (PPG Industries, Inc. v. Transamerica Ins. Co., supra, 20 Cal.4th at pp. 315-316, 84 Cal.Rptr.2d 455, 975 P.2d 652.)
The court identified three public policy considerations which militated against imposing liability on Transamerica. Two of them apply here. "First, there is the policy of not allowing liability for intentional wrongdoing to be offset or reduced by the negligence of another." (PPG v. Transamerica, supra, 20 Cal.4th at p. 316, 84 Cal.Rptr.2d 455, 975 P.2d 652.) Clearly, this policy is contrary to the result advocated by the majority here. And it is an important policy. Dilution of responsibility for intentional wrongdoingmuch less malicious and oppressive wrongdoingcan only result in perceived injustice and consequent diminution of respect for the law.
"Second, the purposes of punitive damages ... are to punish the defendant and to deter future misconduct by making an example of the defendant." (PPG v. Transamerica, supra, 20 Cal.4th at p. 317, 84 Cal.Rptr.2d 455, 975 P.2d 652.) Imposition of malpractice liability for punitive damages does nothing to promote either of these goals, and, to the extent it attenuates punitive damages and spreads the cost throughout the legal community and its insurers, it sets back the cause of deterrence.
Allowing the O'Connor Agency to recover punitive damages from Brodkin would further no legitimate goal of the civil justice system. It would not make the O'Connor Agency whole; the compensatory damages they won in their original lawsuit did that. It would not punish the party whose conduct allegedly merited punitive damages; Anchor Publications, the original tortfeasor, would notcannotbe a party to the malpractice action. And the majority explicitly eschews any deterrence of Brodkin. (See maj. opn., ante, p. 341.) So what do we accomplish by sanctioning this lawsuit?
Well, we certainly enrich errors and omissions carriers. Their rates should go up considerably. And we make it a great deal more difficult to practice law. After all, if we begin by holding attorneys liable for "lost" punitive damages awards, how do we stop short of holding them liable for "inadequate" punitive damages awards. And if we hold them liable for inadequate punitive damages awards, how do we exempt them from responsibility for failing to seek punitive damages. And if we hold them responsible for failing to seek punitive damages, how do we restrain them from seeking punitive damages in all cases in which they would be even remotely recoverablesolely as a means of mollifying their errors and omissions carriers?[4]
I am concerned that the pit at the base of this slippery slope will soon fill to the brim with lay juries forlornly trying to *347 figure out whether good lawyering would have convinced some nonexistent, putative jury not just to award compensation to the plaintiff, but also to inflict punishment upon the defendantand if so, how much. At some point we have to face, as a policy issue, the ability of a jury to make sense of all this. Punitive damages are several degrees of magnitude more speculative than either general or special damages. And we are now considering interposing another layer of isinglasstheir ability to imagine what another jury would have done between their view of the facts and their application of the law. That can only lead to badly blurred outcomes.
This was a policy consideration not before the Supreme Court in the PPG case. There the punitive damage amount was set in stone. Here it will have to be proved. And managing that proof will be a nightmare. Will Anchor Publications, the underlying tortfeasor, be required to come in and divulge its financial information in the new lawsuit? Will the jury be told what the first jurywithout any knowledge of Anchor's net worthawarded in the way of punitive damages? Will jurors from the first trial be allowed to testify? And if so, will they be allowed to describe their state of mind or will they be limited to objective facts such as what was said during deliberations? As an ex-trial judge who would have chewed off a limb to escape the task of guiding a jury through the morass this lawsuit will be under the majority opinion, I think we should draw the lineand that, after all, is what proximate cause determinations doat a point short of this abyss. I think that point is compensatory damages.
I simply see no good to come of such lawsuits. I certainly do not think we need to make attorneys liable in malpractice for lost punitive damages. Nothing in this record or the literature of the law suggests that, in the absence of such exposure, attorneys will not put forth their best efforts to obtain punitive damages awards where they are appropriate. Our profession is blessed with a huge reservoir of talented and conscientious people, and even if we disregard that fact and examine the issue from the most cynical viewpoint, it is quite simply in their financial best interest to exert themselves fully and to a high standard of practice in seeking such awards. Failure to prove recoverable punitive damages probably cost this lawyer a six-figure fee; in other cases it would be seven figures. As incentives go, that's a gem.
Nor am I convinced plaintiffs will be any less likely to seek punitive damages if they cannot recover against their attorney for errors made in seeking them. I see no prospect that the Piscitelli rule will discourage plaintiffs from seeking punitive damages. Litigants willing to brave the felicitously described "army of unhappy navy blue suits" envisioned in the majority opinion (maj. opn., ante, at p. 341) in order to obtain punitive damages will be unlikely to lose their resolve and turn tail if they learn they will not be able to recover those punitives if their attorney steps on a land mine.
Indeed, it seems to me the more probable upshot is just the opposite. While counsel and client might think twice about seeking punitive damagesgiven the horrific consequences of that decision described in the majority opinionan attorney who has the choice of going for the brass ring and facing those consequences or not going for it and being sued for malpractice is less likely to counsel his client against it. "As good to be slaughtered for a goat as slaughtered for a sheep."
So why would we impose this liability? What policy would cause us to conclude that a monetary award whose sole ratio *348 vivendi was to punish a malicious or oppressive wrongdoer should go on living after that wrongdoer has escaped? Why would we consider it necessary to adopt a rule which will inevitably result in punishing someone who drives a Buick and pays a mortgage and saves for college tuition by imposing upon that person the six-to-eight-figure award originally tailored to deter the cruelty and arrogance of a multinational corporation? [5]
Surely we are not so determined to punish the original transgression that we are willing to attach liability to a person who lets the transgressor escape. If we are enamored of that kind of reasoning, not only the practice of law, but the profession of law enforcement is endangered. Police work is destined to become a much more hazardous activity than it already is.
It seems to me we would impose this liability only if we decided the only relevant consideration in imposing legal malpractice damages was causation in fact. If we chose to eliminate difficult legal decisions by imposing liability for any damages for which causation in fact could be shown, we would embrace the majority's decision in this case because it is clear, predictable, and attaches responsibility to someone for that half-million dollar pound of flesh we may feel society is entitled to from the original tortfeasor in this case.
All of these considerationseven the last one, I reluctantly admitappeal to me. But I think the lawand the practice of law is better served by imposing a limit here. I think we should adopt the Piscitelli rule, limit damages for legal malpractice to those which return the injured party to status quo ante bonanza, and affirm this judgment.
NOTES
[1] The word "loss" indicates part of my problem with the majority opinion in this case. What was "lost" in this case was the judgment of a jury which was based on inadequate evidence and incorrect instructionsa judgment we reversed some months ago. This judgment was not based on anything as quantifiable as a plaintiff's injuries or financial loss, but rather upon an attempt by a jury to arrive at an amount appropriate to deter and punish a defendant whose net worth they did not know. To refer to anything that evanescent as a "loss," much less as "damages" suffered by the plaintiff seems to me to reflect not just a semantic problem but a flaw in reasoning.
[2] Actually, Palsgraf was not the first case to struggle with the proximate cause equation, but it so clearly shaped the debate that it has become the shorthand reference for it.
[3] My colleagues are of a mind that proximate cause issues are for the legislature to determine. I can find no support for that in the law.
[4] This is, of course, analogous to the problem decried by many of our friends in the medical profession, who find themselves ordering tests and procedures not because they consider them medically necessary, but because they believe them likely to forestall litigation.
[5] Or, to rephrase the question for those inclined to point out that it will be the errors and omissions carrier who pays that award, "Why should the entire legal profession pay premiums to cover the malice and oppression of an unpunished conglomerate?"